# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 9, 2009         Decided June 26, 2009

No. 08-5398

DEL MONTE FRESH PRODUCE COMPANY
AND DEL MONTE FOODS U.A.E. FZE,
APPELLANTS

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-02143)

*Daniel G. Jarcho* argued the cause and filed the briefs for appellants.

*Anisha S. Dasgupta*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Michael F. Hertz*, Acting Assistant Attorney General, and *Douglas N. Letter*, Litigation Counsel. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

Dissenting opinion by *Chief Judge* SENTELLE.

ROGERS, *Circuit Judge*: The only question on appeal is whether the district court erred in dismissing as moot a complaint seeking a declaratory judgment. We hold that it did.

## I.

The Trade Sanctions Reform and Export Enhancement Act of 2000 (the "TSRA"), 22 U.S.C. §§ 7201-7211, limits restrictions imposed unilaterally by the President on exports of food, medicine, and other agricultural products to Iran, Libya, North Korea, Sudan, and Cuba. Aimed at lifting embargoes to expand export opportunities particularly for agricultural products, *see* 146 Cong. Rec. 23,110-11 (2000) (drafters' statement of Sens. Hagel and Ashcroft), the TSRA provides that "the President may not impose a unilateral agricultural sanction or unilateral medical sanction against a foreign country or foreign entity" without the prior approval of Congress. 22 U.S.C. § 7202(a).[1] As relevant here, § 906 of the TSRA

---

[1] A "unilateral agricultural sanction" is defined as:

any prohibition, restriction, or condition on carrying out an agricultural program with respect to a foreign country or foreign entity that is imposed by the United States for reasons of foreign policy or national security, except in a case in which the United States imposes the measure pursuant to–

(A) a multilateral regime and the other member countries of that regime have agreed to impose substantially equivalent measures; or

(B) a mandatory decision of the United Nations

authorizes limited restrictions on exports of agricultural products to countries that the State Department has determined "to have repeatedly provided support for acts of international terrorism." *Id.* § 7205(a)(1).[2]  Such exports require a one-year license, which will authorize exports pursuant to contracts entered into during the license period so long as the products are shipped within one year of the signing of the covered contract.  The

Security Council.

22 U.S.C. § 7201(6).

[2] Section 906(a)(1) provides:

Notwithstanding any other provision of this chapter (other than section 7203 of this title), the export of agricultural commodities, medicine, or medical devices to Cuba, the Taliban or the territory of Afghanistan controlled by the Taliban, or to the government of a country that has been determined by the Secretary of State to have repeatedly provided support for acts of international terrorism under section 2371 of this title, section 2405(j)(1) of Title 50, Appendix, or section 2780(d) of this title, or to any other entity in such a country, shall only be made pursuant to 1-year licenses issued by the United States Government for contracts entered into during the one-year period of the license and shipped within the 12-month period beginning on the date of the signing of the contract, *except* that the requirements of such 1-year licenses shall be *no more restrictive* than license exceptions administered by the Department of Commerce or general licenses administered by the Department of the Treasury, except that procedures shall be in place to deny licenses for exports to any entity within such country, or in the territory of Afghanistan controlled by the Taliban, promoting international terrorism.

22 U.S.C. § 7205(a)(1) (emphasis added).

licensing requirements "shall be no more restrictive than license exceptions administered by the Department of Commerce or general licenses administered by the Department of the Treasury,"[3] except for procedures involving export licenses to an entity in such country, or in the Taliban-controlled area of Afghanistan, "promoting international terrorism." *Id.*

The Treasury Department, through the Office of Foreign Assets Control ("OFAC"), published an interim rule on July 12, 2001 to carry out TSRA § 906 with regard to exports to Iran and other countries, stating in the preamble it was adopting an expedited licensing process, with deadlines for agency action that in material respects are the same as those of the Commerce

---

[3] A Commerce Department license exception under the Export Administration Act of 1979, 50 App. U.S.C. §§ 2401-20, is defined as an "authorization . . . that allows [an exporter] to export or reexport under stated conditions, items . . . that would otherwise require a[n individual] license." 15 C.F.R. § 740.1(a). Commerce regulations governing agricultural commodities prevented overseas shipments to an entity on the lists of Specially Designated Terrorists or Foreign Terrorist Organizations, 15 C.F.R. § 740.18(b)(1), or where another federal agency objects on grounds the recipient "may promote international terrorism," as long as the objection is lodged within *nine business days* of the referral and within *eleven business days* after receipt of notice of application for license, *id.* § 740.18(c)(4). When the TSRA was enacted, Treasury regulations authorized general licenses for exporters of agricultural products to Iran to enter into executory contracts, but required specific licenses "issued on a case-by-case basis to permit the performance" of such executory contracts. *See* Sudanese Sanctions Regulations; Libyan Sanctions Regulations; Iranian Transactions Regulations: Licensing of Commercial Sales of Agricultural Commodities and Products, Medicine, and Medical Equipment, 64 Fed. Reg. 41,784, 41,792 (Aug. 2, 1999) (codified at 31 C.F.R. § 560.530) (amended Nov. 1, 1999; repealed July 12, 2001).

Department.[4]  Under this expedited process, OFAC would refer the application to other agencies, and, provided the license application met the requirements set forth in the regulations, OFAC would issue the license so long as no objection was received within nine business days.  However, on March 20, 2007, OFAC announced that the events of September 11, 2001

---

[4]  *See Exports of Agricultural Products, Medicines, and Medical Devices to Cuba, Sudan, Libya, and Iran; Cuba Travel-Related Transactions*, 66 Fed. Reg. 36,683 (July 12, 2001).  The preamble to the interim rule stated that OFAC had "endeavored to implement the TSRA in a way that is consistent with both the statutory language and the intent of its drafters and in a manner that also provides exporters with an efficient and expedited process for engaging in authorized exports of agricultural commodities, medicine, and medical devices."  *Id.* at 36,684.  Specifically, OFAC stated:

> The expedited process will include, when appropriate, referral of the one-year license request to other government agencies for guidance in evaluating the request.  If no government agency raises an objection to or concern with the application within *nine business days* from the date of any such referral, OFAC will issue the one-year license, provided that the request otherwise meets the requirements set forth in this rule.  If any government agency raises an objection to the request within *nine business days* from the date of referral, OFAC will deny the request for the one-year license.  If any government agency raises a concern short of an objection with the request within nine business days from the date of referral, OFAC will delay its response to the license request for *no more than thirty additional days* to allow for further review of the request.

*Id.* at 36,684-85 (emphasis added).  The TSRA drafters' statement of purpose stated: "We expect that regulations to implement [the TSRA] will promptly liberalize the current administrative procedures for the export of agriculture and medicine."  146 Cong. Rec. at 23,110.

had "magnified concerns about international terrorism," that "the volume of license requests has increased substantially since the inception of the TSRA program, and [that] applications are now much more complicated than the earlier ones." *Sudanese Sanctions Regulations; Iranian Sanctions Regulations*, 72 Fed. Reg. 12,980, 12,981 (Mar. 20, 2007) ("*OFAC March 2007 Regulations*"). Although confirming it would continue to conduct a review of license applications "consistent with the requirements of section 906 of TSRA," OFAC stated, however, that "OFAC's processing . . . may take longer than the time periods suggested at the inception of the TSRA program." *Id*.

Del Monte Fresh Produce Company is a vertically integrated producer, marketer, and distributor of fresh fruits and vegetables, and facilitates sales abroad by its foreign affiliates, such as Del Monte Foods (U.A.E.) FZE (together "Del Monte"). On August 8, 2007, Del Monte submitted an application to OFAC for a one-year license (the "August 2007 license") to export agricultural commodities to ten entities in Iran, none of which were listed on either of the two terrorists lists identified in Commerce Department regulations. Del Monte alleges that because the August 2007 license application contained all of the information specified in OFAC regulations, OFAC referred the application to the State Department on August 17, 2007, and that the State Department responded on September 13, 2007 without raising an objection to issuance of the license. Still, OFAC did not issue the license. Del Monte's repeated inquiries to OFAC about the status of the license revealed only that its application was pending. On November 27, 2007 Del Monte was advised by OFAC's "help desk" that its August 2007 license application was still pending.

On November 28, 2007 Del Monte filed suit. It had been more than 110 days since OFAC had received the August 2007 license application, more than 100 days since OFAC referred the

application to the State Department, and more than 75 days since the State Department's response. On November 29 Del Monte filed a motion for a preliminary injunction, the district court scheduled a status conference on that motion, and OFAC issued the August 2007 license to Del Monte.

Del Monte filed an amended complaint on January 10, 2008 seeking a declaratory judgment that OFAC's failure to issue the August 2007 license until November 29, 2007 constituted agency action that was both unlawfully withheld and unreasonably delayed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). In addition to alleging facts relating to OFAC's unlawful delay in issuing the August 2007 license, Del Monte alleged that OFAC's "licensing inaction and/or action at issue in this case is in its duration too short to be fully litigated prior to its cessation or expiration," because the time required to litigate the case was longer than the mandatory deadlines and the time necessary for the government to review the application. Am. Compl. ¶ 32. Further it alleged, "[b]ecause facilitating sales of, and selling, food products to Iran is, and has been, a part of Del Monte's ongoing business plan, Del Monte will continue to apply for OFAC licences in the future on a continuing basis," *id.* ¶ 33, and "[t]here is a reasonable expectation that Del Monte will be subject to the same inaction and/or action by OFAC again in the future with respect to future license applications," *id.*

The district court granted the government's motion to dismiss the complaint for lack of subject matter jurisdiction on grounds of mootness pursuant to Federal Rule of Civil Procedure 12(b)(1). *Del Monte Fresh Produce Co. v. United States*, 565 F. Supp. 2d 106 (D.D.C. 2008). The district court observed that where a plaintiff seeks only declaratory relief as a remedy for a defendant's past conduct, the action will be moot unless one of two exceptions to mootness applies. With regard

to the capable of repetition yet evading review exception, the district court concluded that because Del Monte's amended complaint only sought relief for the handling of the August 2007 license application, and OFAC had already issued that license, "it is impossible for delay of that application to reoccur." *Id.* at 113. With regard to the voluntary cessation exception, the district court credited the representations of OFAC and concluded that its issuance of the August 2007 license on November 29, 2007 was independent of Del Monte's lawsuit.

## II.

Del Monte appeals the dismissal of its amended complaint on the principal ground that the claim for relief falls within the capable of repetition but evading review exception to the mootness doctrine. Our review is *de novo*. *See Munsell v. Dep't of Agric.*, 509 F.3d 572, 578 (D.C. Cir. 2007).

"A case is moot when 'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party.'" *United States v. Philip Morris USA, Inc.*, No. 06-5267, slip op. at 63 (D.C. Cir. May 22, 2009) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). In at least two kinds of cases the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot. *City of Houston, Tex. v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1429-30 (D.C. Cir. 1994).

First, a plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy. *Id.* at 1429. In *Super Tire Engineering v. McCorkle*, 416 U.S. 115, 125 (1974), the Supreme Court held that although a claim for injunctive relief preventing payment of welfare benefits during a strike was moot

because the strike had ended, the employers' request for declaratory relief was not moot because the state's ongoing policy of paying strike benefits was, on the employers' theory of the case, "immediately and directly injurious to the [employers'] economic positions." Of course, plaintiffs challenging an ongoing policy must demonstrate "standing to bring such a forward-looking challenge and [that] the request for declaratory relief is ripe." *City of Houston*, 24 F.3d at 1429.

Second, even though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot even if the "plaintiff has made no challenge to [an] ongoing underlying policy, but merely attacks an isolated agency action," so long as "the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine." *Id.* (internal quotation marks and citations omitted). In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999), the Supreme Court held that the challenge by two mental patients to their confinement in a segregated environment was not mooted by their post-complaint transfers because "in view of the multiple institutional placements [they had] experienced, the controversy they brought to court [was] capable of repetition, yet evading review." (internal quotation marks and citations omitted); *see also Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 578 (1987). Del Monte has chosen this second route by alleging that OFAC's failure to act promptly on Del Monte's August 2007 license application is capable of repetition yet evades review.

Under the capable of repetition yet evading review exception to mootness, the plaintiff must demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would

be subjected to the same action again." *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990) (en banc) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)) (alteration in original); *see also Honig v. Doe*, 484 U.S. 305, 318-20 & n.6 (1988). When these "two circumstances [are] simultaneously present," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998), the plaintiff has demonstrated an "exceptional circumstance[]," *id.*, in which the exception will apply, *id.*; *see Clarke*, 915 F.2d at 704. "Its theoretical justification is somewhat obscure," *Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia* ("*KKK*"), 972 F.2d 365, 369 (D.C. Cir. 1992) — the "evading review" aspect perhaps suggesting justiciability by necessity while its "capable of repetition" aspect "assuring that the parties have a sufficient interest in the result," *id.* — but the exception is well established. Del Monte has met its burden on both prongs.

First, a challenge to the timeliness of OFAC's response to applications for a one-year license cannot be fully litigated before the expiration, let alone the granting, of the requested license. By "evading review" "the Supreme Court has meant evading Supreme Court review." *Id.* This court has held that agency actions of less than two years' duration cannot be "fully litigated" prior to cessation or expiration, so long as the short duration is typical of the challenged action. *Pub. Utils. Comm'n v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001); *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996). The TSRA license covers only contracts signed during a one year period; shipments pursuant to the contract must be made within a year of the date the contract is signed. 22 U.S.C. § 7205(a)(1). Moreover, even though OFAC has announced that it may not be able to process license applications within the deadlines allegedly required by the TSRA, the longest delay identified by Del Monte was only 111 days and the average time for OFAC to act on license applications from July 2006 to

March 2007 did not exceed 74 business days. Am. Compl. ¶¶ 27-28; Del Monte's Opp'n to Mot. to Dismiss, Ex. 1. Del Monte's challenge thus meets the evading-review prong of the exception.

Second, in order to decide whether the same type of inaction or unreasonable delay is sufficiently likely to recur, the court must first determine "exactly what must be repeatable in order to save [the] case from mootness." *People for the Ethical Treatment of Animals, Inc. v. Gittens* ("*PETA*"), 396 F.3d 416, 422 (D.C. Cir. 2005); *see also Clarke*, 915 F.2d at 703. Three circuit precedents provide instruction:

- In *PETA* the court adopted a functional approach, explaining that "[t]he 'wrong' that is, or is not, 'capable of repetition,' must be defined in terms of the precise controversy it spawns," that is, the wrong must be "put in terms of the *legal questions* it presents for decision." 396 F.3d at 422-23 (emphasis added). In that case the issue presented by PETA's First Amendment challenge to the government's allegedly pretextual rejection of PETA's submission to a city-wide display of privately-designed, government-selected statues was highly fact-dependent. As such, the court concluded that the wrong suffered by PETA was unlikely to recur, and that the claim was therefore moot.

- In *Clarke*, the *en banc* court explained that the wrong at issue for mootness purposes is defined by the plaintiffs' theory set forth in the complaint. *Clarke*, 915 F.2d at 703-04. There, Members of the D.C. Council challenged a federal statute as a violation of their First Amendment rights because it conditioned appropriations for the District of Columbia on the D.C. Council's amendment of the D.C. Human Rights Act. *Id.* The United States had suggested

the injury be defined as "congressional use of funding to induce appellees to enact specific language allowing religiously affiliated institutions to discriminate against homosexuals;" the D.C. Council Members had suggested the issue was "whether Congress can coerce [their] votes by withholding appropriated funds." *Id.* at 703. This court rejected both suggestions: the United States' position because it included "facts completely irrelevant to any intelligible formulation of plaintiffs' claim," and the D.C. Council Members' suggestion because it attempted to press "a broader notion of their injury than the one on which they originally sought relief." *Id.* Instead, the court focused on identifying the factors that were "essential to plaintiffs' original theory of their claim," concluding that even "broadly conceived" the "injurious act" of which the Council Members complained — Congress's conditioning of funding on the Council's "enactment of legislation in specific language" — was not reasonably likely to recur. *Id.* at 704.

• In *KKK*, 972 F.2d at 369-70, although the Klan challenged no regulations on their face, and its complaint concerned only its requests for an October 28, 1990 parade permit, the court held the controversy was capable of repetition because there was a reasonable likelihood that in the future the Klan would seek parade permits, raising the same concerns of violence. The Klan had requested a permit to march along Constitution Avenue from 14th to 3rd Streets on October 28, 1990; citing the risk of violence incited by the Klan's presence, the District government granted a parade permit for only four blocks. As this court subsequently explained, the wrong in the *KKK* case was not limited to the treatment of the Klan's application for the October 28, 1990 parade, but rather "consisted of the District [government]'s refusal, in alleged violation of the

13

First Amendment, to grant a parade permit because the march would provoke violence." *PETA*, 396 F.3d at 423.

The district court's approach in identifying the wrong alleged in Del Monte's amended complaint failed to adhere to this precedent. In agreeing with this approach, our dissenting colleague does likewise. Dis. Op. at 1. The district court concluded, and the government maintains on appeal, that Del Monte's claims are not capable of repetition because the alleged wrong was the delay in acting on Del Monte's August 2007 license application. On this view of the mootness inquiry, because the August license was granted, the wrong is not capable of repetition. However, the district court's approach focuses on whether the precise historical facts that spawned the plaintiff's claims are likely to recur, rather than whether the legal wrong complained of by the plaintiff is reasonably likely to recur, as our precedent requires. *See PETA*, 396 F.3d at 422; *KKK*, 972 F.2d at 370; *Clarke*, 915 F.2d at 703-04.

Del Monte has shown there is a reasonable likelihood it will be subjected to the same challenged action in the future. It alleged that OFAC was required to, but did not, grant Del Monte's properly-prepared license, Am. Compl. ¶¶ 22-23, 30, "nine business days after [OFAC] refer[red] the application for review by other agencies, [when] the other agencies lodge[d] no objection within that nine business-day period," *id.* ¶ 20. According to the amended complaint, this deadline was imposed by TSRA § 906's incorporation of Commerce and Treasury Department regulations as a ceiling on the restrictiveness of the licencing procedures and by OFAC's adoption of the nine-business-day deadline. *Id.* ¶¶ 20-21. OFAC's failure to respond to the August 2007 application until November 29, 2007 was, Del Monte alleged, unlawful in two ways: it constituted action unlawfully withheld and action unlawfully delayed. *Id.* ¶¶ 35-36, 39-40. Therefore, under the theory in the amended

14

complaint, it was irrelevant whether OFAC can or will delay action on the now-granted August 2007 license application; what matters is whether it is reasonably likely that Del Monte will suffer the same type of legal wrong — unlawfully withheld approval or unlawful delay by OFAC in violation of TSRA § 906 — in the future.  To answer this jurisdictional question, we look to the complaint and the undisputed facts in the record. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

When Del Monte filed suit on November 28, 2007, OFAC had not granted the August 2007 license; because standing is assessed as of the time a suit commences, Del Monte has standing to seek declaratory relief.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190-91 (2000).  With regard to mootness, Del Monte proffered the unchallenged declaration of its associate general counsel that "[s]elling food products to Iran is, and has been, a part of [Del Monte's] business plan" and that Del Monte "will definitely apply for OFAC licenses in the future, on a continuing basis." Decl. of Jeffrey S. Bailey, ¶ 4, Feb. 7, 2008.  Del Monte also proffered unchallenged evidence tending to show that OFAC will not act on Del Monte's future licenses within the mandated time limits and indeed that the delays may be substantial. Addressing past conduct, an international trade specialist at Del Monte's law firm described how OFAC had failed to act on Del Monte's license applications within the nine-day deadline on five separate occasions in the past.  Decl. of Katia Gousset, ¶¶ 2-8, Feb. 7, 2008.  In that regard, the specialist noted that at least one of OFAC's past delays in acting was substantial — 100 days from when Del Monte submitted the application and nearly two months after OFAC learned that the State Department did not object to issuance of the license.  Addressing OFAC's intent in addressing future applications, Del Monte pointed to OFAC's announcement on March 20, 2007 that its "processing of

one-year license requests may take longer than the time periods suggested at the inception of the TSRA program." *OFAC March 2007 Regulations*, 72 Fed. Reg. at 12,981.

With the allegations in the amended complaint and these uncontested declarations, Del Monte has shown a reasonable likelihood that in the future OFAC will fail to act on its applications within the purportedly mandatory period and that at least some of those delays will be as unreasonable as the August 2007 license application delay, and has thereby met its burden of showing a reasonable likelihood that it will be subject to the same legal wrong. *See KKK*, 972 F.2d at 370-71. Neither *Clarke*, on which the district court relied, nor other precedent requires that the very same facts must recur for the capable of repetition exception to apply. *See, e.g.*, *Burlington N. R.R. Co.*, 75 F.3d at 689. Indeed, in *Clarke*, 915 F.2d at 703, the *en banc* court rejected a similar government suggestion that the plaintiffs were required to demonstrate that Congress was likely to use funding to induce the D.C. Council to enact a specific provision of law on the exact same issue in the future, writing that the issue on which Congress induced the D.C. Council to act was "completely irrelevant to any intelligible formulation of plaintiffs' claim," and therefore "equally irrelevant to the mootness issue." So too, here. The unrepeatable particulars of OFAC's delay of Del Monte's August 2007 application — when the delay occurred, the contracts that the delay endangered — are irrelevant to Del Monte's legal theory in the amended complaint for declaratory relief.

The government presents two responses: First, because Del Monte's amended complaint did not seek relief from OFAC's general policy of handling license applications, the wrong is limited to OFAC's delay on the August 2007 application. Second, the amended complaint should not be construed as a challenge to OFAC's general policy because such a challenge is

not authorized under § 706(1) of the APA. These responses fail because they conflate the plaintiff's choice of the scope of relief with the legal determination — for mootness purposes only — of "the injury that is capable of repetition," *Clarke* 915 F.2d at 703. Del Monte seeks declaratory relief for OFAC's delay of its August 2007 license application, contending that its claim is not moot because the legal wrong it suffered — the delay purportedly in violation of TSRA § 906 — is likely to recur. In *City of Houston*, 24 F.3d at 1429-30, the court distinguished between requests for declaratory relief as to specific agency actions and as to ongoing policies, explaining that where, as here, the plaintiff only challenges a specific agency action, its claim for declaratory relief will not be moot if it can show that the legal wrong allegedly inflicted by the agency is capable of repetition yet evading review.[5]

Del Monte's amended complaint presents a classic example of a legal injury that is capable of repetition yet evading review. It engages in an ongoing commercial enterprise — exporting food products to clients located in Iran — that requires one-year licenses. It has proffered unrebutted evidence that it is reasonably likely that the licensing agency will not conform to the expedited procedures that Del Monte contends are mandated by Congress. Moreover, as of March 20, 2007 the agency itself confirmed that such delays were likely to recur in the future. Del Monte has encountered a series of substantially similar

---

[5] Because Del Monte's challenge is only to delay relating to the August 2007 license, the court has no occasion to decide whether Del Monte could bring a forward-looking challenge to OFAC's license-processing policy under § 706(1) of the APA. Neither does the court have the occasion to address the limits, if any, that § 706(1) would impose on Del Monte's request for declaratory relief, for any limits are not jurisdictional, *see Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006).

injuries from delays of substantially similar license applications in the past, and given its business plan it anticipates suffering similar injuries in the future. *See* Am. Compl. ¶ 33. As the same parties will encounter the same type of circumstances involving alleged violations of the same laws, we hold that Del Monte's request for a declaratory judgment falls within the exception to mootness for legal wrongs that are capable of repetition yet evade review, notwithstanding that the August 2007 license that occasioned this lawsuit has been issued.

Accordingly, we reverse the dismissal of the amended complaint pursuant to Rule 12(b)(1), and we remand the case to the district court to address the merits of Del Monte's request for declaratory relief.

SENTELLE, *Chief Judge*, dissenting: Briefly put, I would affirm the decision of the district court because I believe the district court's decision is exactly correct. I will not belabor the facts, as they are set out by the majority above and are readily available in the district court's opinion. *See Del Monte Fresh Produce Co. v. United States*, 565 F. Supp. 2d 106, 108-09 (D.D.C. 2008). In summary, appellants filed this action seeking a judgment declaring that the Office of Foreign Assets Control (OFAC) unlawfully withheld or unreasonably delayed issuance of a single license for food shipments to Iran in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(1). Appellants filed that complaint on November 28, 2007; appellants received the license on November 29, 2007.

As the district court stated, "'[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot.'" *Del Monte*, 565 F. Supp. 2d at 110 (quoting *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001)). Since it is apparent that this case falls within that description, the district court rightly entered a judgment of dismissal for lack of jurisdiction, by reason of mootness.

Granted, appellants argue that this case falls within one or both of two discrete exceptions to the mootness doctrine—"capable of repetition yet evading review" and "voluntary cessation." To allow this case to go forward based on either of those exceptions is to allow the exception to swallow the mootness doctrine.

As the district court reminded us, "[t]he 'capable of repetition yet evading review' exception 'applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the [alleged wrong is] in its duration too short to be fully litigated prior to cessation or

expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same [alleged wrong] again.'" *Id.* at 112 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). The action sought relief as to delay on one license. That license has been issued. The Trade Sanctions Reform and Export Enhancement Act cannot delay the issuance of that license any more. The case is moot. Any possible future licenses may or may not be delayed; indeed, may or may not be sought, and may or may not be issued. In some sense, any action is capable of repetition. Certainly, the grant or delay of grant of any license can recur. There is nothing exceptional about the current circumstances to differentiate it from the grant or delay of grant of any other license. Such a case can become moot. It does not automatically fall within the capable of repetition yet evading review exception.

The most that appellants point to in arguing for application of the exception is that OFAC has been slow in granting previous licenses. The Supreme Court has told us repeatedly "that past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). That is all appellants offer here. The relief sought had been granted before the complaint even reached the judge. The preexisting controversy was therefore moot. The district court correctly dismissed the case. There was no showing that the alleged wrong was likely to recur.

Appellants also rely on the "voluntary cessation" exception to the mootness rule. Such an exception, perhaps even rarer than the capable of repetition exception, applies when a defendant has voluntarily stopped the transaction, but may "return to [its] old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). It does not apply where "'there is no reasonable expectation . . . that the alleged violation will recur'

3

and . . . 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Del Monte*, 565 F. Supp. 2d at 113 (quoting *Doe v. Harris*, 696 F.2d 109, 111 (D.C. Cir. 1982)).

The district court correctly ruled that this exception is unavailable for multiple reasons.  First, the exception is designed to prevent a defendant from "rendering a case moot through manipulative unilateral action after the case is filed." *Id.* (citing *United States v. W.T. Grant Co.*, 345 U.S. at 649).  In this case, although Del Monte did not learn of the grant of its license until after it had filed the lawsuit, responsible OFAC officials signed the license six days prior to the filing of the complaint.  Therefore, the exception is inapplicable at the outset. Even if the exception otherwise applied, appellants have failed to bring this case within it, in that they have shown no reasonable expectation that the alleged violation will recur, and events have completely eradicated the effects of the delay in the issuance of the license.

In short, I would affirm the decision of the district court.  I therefore respectfully dissent.