# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 8, 2013        Decided June 25, 2013

No. 12-5168

INTERNATIONAL INTERNSHIP PROGRAM,
APPELLANT

v.

JANET ANN NAPOLITANO, SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01234)

*Frederic W. Schwartz*, *Jr.* argued the cause and filed the briefs for appellant.

*Aaron S. Goldsmith*, Senior Litigation Counsel, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *David J. Kline*, Director, and *Durwood H. Riedel*, Trial Attorney.

Before: HENDERSON, TATEL, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: An organization known as International Internship Program sponsors a cultural exchange program that helps people from Asian countries find jobs in American schools. To participate in a cultural exchange program sponsored by a U.S. employer, a foreign citizen must obtain a Q-1 visa from U.S. Citizenship and Immigration Services, known as USCIS. USCIS is part of the Department of Homeland Security. As part of the Q-1 process, USCIS also must approve the employer's cultural exchange program and the employer's eligibility as a qualified employer for such a program.

USCIS has issued regulations governing cultural exchange programs and Q-1 visas. The key regulation here requires that the program have a "work component" and that the employer offer the foreign citizen "wages and working conditions comparable to those accorded local domestic workers similarly employed." 8 C.F.R. § 214.2(q)(3)(iii)(C), (q)(4)(i)(D).

Beginning in 2010, USCIS denied several of International Internship's petitions for Q-1 visas for foreign applicants to its cultural exchange program. USCIS did so because it interpreted its regulation to require sponsors of a cultural exchange program to pay wages to the participating aliens. International Internship admittedly does not pay its participants any wages. USCIS therefore concluded that International Internship did not satisfy the requirements for Q-1 visas. The District Court upheld USCIS's decision.

In this Court, International Internship challenges USCIS's ruling on three grounds.

*First*, International Internship contends that USCIS's interpretation and application of the regulation is inconsistent with the governing federal statute. International Internship argues that unpaid foreign interns are eligible to participate in a Q-1 program so long as there are comparable unpaid American interns in the local workforce. But the statute provides that foreign participants "will be employed under the same wages and working conditions as domestic workers." 8 U.S.C. § 1101(a)(15)(Q). Given the statute's specific references to "employed," "wages," and "workers," we agree with USCIS that the statute is best read to require that the foreign citizens receive wages and that those wages be equivalent to the wages of domestic workers.[1]

*Second*, International Internship essentially advances the same argument based on the language of the similarly worded regulation. The regulation directs that an "employer" must "offer the alien(s) wages and working conditions comparable to those accorded local domestic workers similarly employed." 8 C.F.R. § 214.2(q)(4)(i)(D). The next provision in the regulation requires that an "employer" show that it has "the financial ability to remunerate the participant(s)." *Id.* § 214.2(q)(4)(i)(E). Given the regulation's references to "employer," "wages," "workers," and "remunerate," we agree with USCIS that the regulation – like the statute – is best read to require that the foreign citizens receive wages and that those wages be comparable to those of local workers.[2]

---

[1] Because we conclude that the agency's interpretation of the statute is the better reading, we need not determine whether the agency's interpretation is entitled to *Chevron* deference. *Cf. United States v. Mead Corp.*, 533 U.S. 218, 228-32 (2001).

[2] The District Court found that these initial two arguments were moot because the visa petitions requested approval for Q-1 visas expiring no later than January 2012. We agree with

*Third*, International Internship separately contends that USCIS failed to comply with the Regulatory Flexibility Act and the notice-and-comment procedures of the Administrative Procedure Act. The Regulatory Flexibility Act generally requires agencies, when they promulgate new rules, to analyze and explain the impact of the new rules on small entities. 5 U.S.C. §§ 603(a), 604, 605(b). The Administrative Procedure Act often requires that agencies engage in notice-and-comment procedures when issuing rules. 5 U.S.C. § 553(b)-(c). When it denied International Internship's petitions in 2010, however, USCIS did not trigger the Regulatory Flexibility Act or the Administrative Procedure Act's notice-and-comment procedures because the denials were not rules under either act; rather, they were informal adjudications. *Id.* § 601(2) (RFA); *id.* §§ 551(4), 553(b)-(b)(A) (APA); *see also Central Texas Telephone Cooperative, Inc. v. FCC*, 402 F.3d 205, 211 (D.C. Cir. 2005); *Syncor International Corp. v. Shalala*, 127 F.3d 90, 93 (D.C. Cir. 1997).

\* \* \*

We have considered all of International Internship Program's arguments. We affirm the judgment of the District Court.

*So ordered.*

International Internship that the claims are not moot because they are "capable of repetition but evading review." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). On the merits, however, we affirm the District Court on alternative grounds. *See Nader v. Democratic National Committee*, 567 F.3d 692, 699 (D.C. Cir. 2009).