NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1644
_____

STATE OF DELAWARE DEPARTMENT OF NATURAL
RESOURCES AND ENVIRONMENTAL CONTROL,
                                        Petitioner

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
                                        Respondent
_____

Appeal from the Environmental Protection Agency
(EPA-1: EPA-HQ-OAR- -2016-0764)
_____

Argued March 6, 2018

Before: MCKEE, AMBRO, and RESTREPO, <u>Circuit Judges</u>

(Opinion filed: August 21, 2018)

William J. Kassab          [Argued]
Delaware Department of Justice
820 N. French Street, 6th Floor
Carvel Office Building
Wilmington, DE 19801
        *Counsel for Petitioner*

Jeffrey H. Wood
   Acting Assistant Attorney General
Heather E. Gange          [Argued]
United States Department of Justice
Environment & Natural Resources Division
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044

Abirami Vijayan
Stephanie L. Hogan
United States Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
      *Counsel for Respondent*

_____

OPINION[*]
_____

AMBRO, <u>Circuit Judge</u>

The Clean Air Act allows the Environmental Protection Agency ("EPA") to promulgate national ambient air quality standards. *See* 42 U.S.C. § 7409(b). Each state is responsible for meeting these standards, *id.* § 7410(a), and may petition the EPA if emissions sources from neighboring states are interfering with compliance, *id.* § 7426(b). The EPA resolves the petition through notice-and-comment rulemaking, issuing a proposed rule, accepting comments from the public, holding a public hearing, and publishing a final rule. *See id.* § 7607(d)(2)-(7). If the EPA agrees with the petition, it may order the emissions source to cease operating within three months. *Id.* § 7426(c)(2). Alternatively, it may allow the source to continue operating in line with emissions limitations and compliance schedules. *See id.*

With this backdrop, on December 5, 2016, the State of Delaware submitted a petition to the EPA. It asked the latter to find that emissions from the Conemaugh Generating Station in Pennsylvania impeded its ability to meet ambient air quality

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

standards in 2008 and 2015.[1] Per the statutory scheme, the EPA was required to issue a final rule on the petition within 60 days—*i.e.*, by February 3, 2017. *Id.* § 7426(b). On January 23, 2017, however, it granted itself a six-month extension that postponed the deadline to August 3, 2017. *See* 82 Fed. Reg. 7,695 (Jan. 23, 2017); *see also* 42 U.S.C. § 7607(d)(10) (authorizing a six-month extension of certain deadlines).

Delaware asks us to review the EPA's extension. It contends the EPA had no authority to lengthen the deadline for acting on its petition. The EPA counters that we have no jurisdiction over Delaware's claim, as it became moot when the extension expired. It also argues the extension is not final agency action fit for judicial review by our Court.

While Delaware's claim was pending, the EPA issued a proposed rule denying the petition. Because it has yet to publish a final rule, we address its jurisdictional arguments. For the reasons stated below, we do not agree that the claim is moot. However, we conclude that the EPA's extension is not final agency action. Accordingly, we dismiss for lack of jurisdiction.

I.     **Mootness**

The EPA argues Delaware's claim is moot because the extension expired on August 4, 2017. In the EPA's view, an order vacating the extension would provide no relief, as no live case or controversy remains. Delaware responds that the EPA

---

[1] Delaware's petition addresses ambient air quality standards for ozone in 2008 and 2015. In November 2017, the EPA "issued a determination" that Delaware "timely attained the 2008 ozone [standards]." EPA Br. at 10 n.4. Because the EPA has yet to make the same finding as to the 2015 standards, its decision has no effect on the petition.

3

misconstrues the type of relief it seeks. Instead of asking us to vacate the order, Delaware tells us it seeks a ruling that the EPA lacked statutory authority to grant itself a six-month extension.

"The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). "The party asserting mootness bears a heavy burden to show the case is moot." *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 254 (3d Cir. 2017). If that is met, "the burden [then] shifts to the party opposing mootness to explain why the case is not moot." *Id.*

"Our impotence 'to review moot cases . . . derives from the requirement of Article III of the Constitution under which the exercise of our judicial power depends upon the existence of a case or controversy.'" *Jersey Cent. Power & Light*, 772 F.2d at 31 (internal quotation marks omitted) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam)). Thus "[a] case may become moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Finberg v. Sullivan*, 658 F.2d 93, 97-98 (3d Cir. 1980) (en banc) (footnote omitted) (internal quotation marks omitted).

In line with these principles, "a matter is *not* necessarily moot simply because the order attacked has expired." *Jersey Cent. Power & Light*, 772 F.2d at 31 (emphasis added). "[I]f the underlying dispute between the parties is one 'capable [of] repetition,

4

yet evading review' [as an exception to mootness], it remains a justiciable controversy within the meaning of Article III." *Id.* This exception "applies only . . . where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (second, third, and fourth alterations in original) (internal quotation marks omitted) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

Here Delaware has satisfied both prongs of the exception. First, the extension—lasting only six months in duration—is too short to be fully litigated before its expiry and thus evades review. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) ("This court has held that agency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration. . . ."). Second, there is a reasonable expectation that Delaware will have to contend with another six-month extension. The record demonstrates that Delaware has filed several petitions in the past and that the EPA has granted itself a six-month extension on at least three prior petitions. Moreover, given its ongoing need to meet national ambient air quality standards, Delaware will likely file more petitions with the EPA. *Cf. id.* at 325-26 ("[S]uch delays [are] likely to recur in the future. [Appellant] has encountered a series of substantially similar injuries from delays of substantially similar license applications in the past, and given its business plan it anticipates suffering similar injuries in the future."). Hence the underlying dispute falls within the "capable of repetition, yet evading review" exception to mootness. *See Jersey Cent. Power & Light*, 772 F.2d at 31.

The EPA counters that Delaware's claim does not evade review because Delaware could have resolved its claim before the extension expired by seeking expedited briefing and argument in our Court. This contention, however, misapprehends controlling precedent. "By ['evading review,'] the Supreme Court has meant evading *Supreme Court* review." *Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*, 972 F.2d 365, 369 (D.C. Cir. 1992) (emphasis added). As such, Delaware's failure to request expedited review in our Court carries no weight in our analysis.

Accordingly, we decline to dismiss Delaware's claim on mootness grounds.

## II.     Finality

The EPA also contends its extension is not final agency action because it is interlocutory and procedural. Delaware responds that the extension is final because it defers the EPA's performance of a non-discretionary duty—issuing a final rule on its petition within a sixty-day time frame.

We review *de novo* whether the extension is final agency action. *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 (3d Cir. 2011). "As a general matter, two conditions must be satisfied for agency action to be 'final': First, [it] . . . must mark the 'consummation' of the agency's decisionmaking process . . . —it must not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation omitted) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). "And second, [it] . . . must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow. . . .'" *Id.* at 178 (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S.

6

62, 71 (1970)). These conditions are analogous—but not identical—to additional factors

our court considers in deciding whether an agency's decision is final:

> 1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act.

*Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 n.7 (3d Cir. 2003)

(internal quotation marks omitted) (quoting *CEC Energy Co. v. Pub. Serv. Comm'n*, 891

F.2d 1107, 1110 (3d Cir. 1989)). Here, regardless whether we follow *Bennett* or

*Corrigan*, the result is the same. The extension is not final agency action, and thus we

lack jurisdiction to review it.

We start our analysis with *Bennett*. The extension does not meet its test for

finality because it does not "mark the 'consummation' of the [EPA's] decisionmaking

process," *Bennett*, 520 U.S. at 178, or "alter[] the status quo," *Impro Prods., Inc. v. Block*,

722 F.2d 845, 851 (D.C. Cir. 1983). Instead, it "merely begins a process" that concludes

with a final rule addressing Delaware's petition. *Clean Air Council v. Pruitt*, 862 F.3d 1,

6 (D.C. Cir. 2017) (per curiam). Moreover, if we were to intervene now, we would

subject the EPA to "judicial interference [before] an administrative decision has been

formalized and its effects felt in a concrete way." *Abbott Labs. v. Gardner*, 387 U.S. 136,

148 (1967). As such, both prongs of *Bennett* indicate that we lack jurisdiction to review

the extension at this point in the rulemaking process.

Moving on to *Corrigan*, the extension also fails to qualify as final agency action because it does not represent the EPA's definitive position on the petition and it does not announce any new regulations that require immediate compliance. While the EPA's delay affects Delaware's ability to address certain sources of pollution in a timely manner, it remains free to challenge the extension by filing suit in district court. *See* 42 U.S.C. § 7604(a)(3) ("The district courts of the United States shall have jurisdiction to compel . . . agency action unreasonably delayed."); *cf. Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 165 (1967) ("[A] refusal to admit an inspector . . . would at most lead only to a suspension of certification services . . . , a determination that can then be promptly challenged. . . ."). We recognize that Delaware's claim involves a pure question of law. However, we are unable to expedite the EPA's rulemaking process, as district courts have exclusive jurisdiction over actions contesting agency delay. *See Sierra Club v. EPA*, No. 01-1008, 2001 WL 476186, at *1 (D.C. Cir. Apr. 20, 2001) (per curiam) ("To the extent petitioner is concerned about unreasonable delay, or failure to meet a nondiscretionary deadline, any relief that may be available to it is by way of an action in district court. *See* 42 U.S.C. § 7604(a)."). Accordingly, a majority of the *Corrigan* factors suggest that the extension is not a final agency decision.

Though both *Bennett* and *Corrigan* tell us we lack jurisdiction, Delaware contends the statute requires us to review the extension. Specifically, it points to § 7607(b)(2), which allows the courts of appeals to review "a[ny] final decision by the [EPA] Administrator [that] defers performance of any nondiscretionary statutory action to a later time." 42 U.S.C. § 7607(b)(2). By its plain terms, however, this provision

8

applies to a "*final* decision." *Id.* (emphasis added). Because the EPA's extension is not final under either our precedent or Supreme Court precedent, § 7607(b)(2) does not obligate us to reach the merits of Delaware's claim.[2]

Delaware also argues we must vacate the EPA's extension before it can ask the District Court to compel agency action under § 7604(a). We disagree. The Clean Air Act does not require our Court to act before a district court issues a ruling under § 7604(a). *See Connecticut v. Pruitt*, 3:17cv796 (WWE), 2018 WL 745953, at *1 (D. Conn. Feb. 7, 2018) (ruling on a suit under § 7604(a) without requiring the plaintiff to obtain vacatur of the extension). Hence the District Court is free to compel the EPA to act on Delaware's petition even when the extension is still in place, and we need not review the EPA's non-final decision for Delaware to obtain the relief it seeks.

\*     \*     \*     \*     \*

In sum, we hold that Delaware's claim is not moot, as it is capable of repetition yet evades review. However, its claim does not challenge final agency action because the

---

[2] Additionally, the statute characterizes extensions under § 7607(d)(10) as "procedural determinations." 42 U.S.C. § 7607(d)(8). It states that we may review them only "at the time of the substantive review of the rule." *Id.* Thus, if we look at the statute as a whole, it seems unlikely that § 7607(b)(2) would penalize extensions taken under § 7607(d)(10). *See LaVallee Northside Civic Ass'n v. V.I. Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 621 (3d Cir. 1989) ("[A] recognized tenet of statutory interpretation directs that a specific provision in an enactment prevails over a seemingly irreconcilable general one."); *see also Portland Cement Ass'n v. EPA*, 665 F.3d 177, 193 (D.C. Cir. 2011) (per curiam) ("This court has never considered an agency decision to continue the rulemaking process to be a 'final agency action,' nor has any court held that we have jurisdiction to review such a decision under [§] 7607(b)(2).").

9

extension is an interlocutory step in the EPA's rulemaking process.[3]  Thus we dismiss for

lack of jurisdiction.

---

[3] Even though we decline to reach the merits of Delaware's claim at this stage of the rulemaking process, today's decision does not bar Delaware from renewing its challenge when the EPA issues a final rule.  As noted, we are unable to reinstate a deadline or compel agency action when Delaware renews its challenge.  However, we may address whether the EPA acted in excess of its statutory authority by issuing itself a six-month extension.  Our review will depend on whether our Court is the proper venue for any subsequent challenges.  *See* 42 U.S.C. § 7607(b)(1) (looking to the reach of the final rule to determine the proper venue).