**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 31 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ANDREW ALLEN; et al.,

            Plaintiffs-Appellants,

   v.

UNITED STATES OF AMERICA; et al.,

            Defendants-Appellees.

No.    17-17463

D.C. No. 3:16-cv-04403-WHA

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted November 13, 2019
San Francisco, California

Before: W. FLETCHER and BADE, Circuit Judges, and MOSKOWITZ,** District
Judge.

Plaintiffs-Appellants, a group of eighteen "persons of one half or more Indian

blood," appeal from the district court's entry of summary judgment in favor of

Defendants-Appellees the United States of America, Sally Jewell, and Amy

---

        *      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        **     The Honorable Barry Ted Moskowitz, United States District Judge for
the Southern District of California, sitting by designation.

Dutschke (collectively, "Appellees") in an action challenging a decision by the U.S. Department of the Interior ("Interior") that Appellants are ineligible to organize as a "tribe" under the Indian Reorganization Act ("IRA") and its implementing regulations. Appellants argue that Interior violated the Administrative Procedure Act ("APA") by denying their request to organize as a tribe. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

We review de novo a summary judgment decision, "thus reviewing directly the agency's action under the [APA's] arbitrary and capricious standard." *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1217 (9th Cir. 2015) (citation and internal quotation marks omitted).[1] Under this standard, we determine whether Interior "relied on" improper factors, "entirely failed" to review an important issue, failed to align its decision with the evidence, or "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We review Interior's factual findings for substantial evidence. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

---

[1] We reject Appellants' arguments that the Indian law canon of construction and "highest fiduciary standards" apply to this appeal. In their settlement agreement, the parties agreed that any dispute about Interior's decision would be brought pursuant to the APA and that the Indian law canon of construction would not apply. The canon also does not apply because not all tribal interests are aligned. *See Redding Rancheria v. Jewell*, 776 F.3d 706, 713 (9th Cir. 2015).

# I.

This case arises from a settlement agreement prescribing an administrative process for Appellants to apply to the Bureau of Indian Affairs ("BIA") for a determination of whether they are eligible to organize as a tribe. To be considered a tribe, the settlement agreement required Appellants to satisfy criteria set forth in 25 U.S.C. § 5129 (formerly 25 U.S.C. § 479) and 25 C.F.R. § 81.1(w)(2) (2014). These provisions define a "tribe" as "any Indian tribe, organized band, pueblo, or the Indians residing on one reservation," 25 U.S.C. § 5129, and "any group of Indians whose members each have at least one-half degree of Indian blood for whom a reservation is established and who each reside on that reservation," 25 C.F.R. § 81.1(w)(2) (2014). The regulation further provides that "[s]uch tribes may consist of any consolidation of one or more tribes or parts of tribes." *Id.*

Appellants timely submitted information to Interior, claiming eligibility to organize as the Ukiah Valley Pomo Indians. During its investigation, BIA published notices soliciting public comments, mailed letters to residents of the Pinoleville Rancheria (the "Rancheria"), and engaged in extensive communications with the Pinoleville Pomo Nation (the "Nation"), a federally recognized tribe, regarding Appellants and their request to organize.

After considering the record, Interior issued a reasoned, written decision concluding that Appellants are ineligible to organize as a tribe. We hold that

3

Interior's determination does not violate the APA and that substantial evidence supports its factual findings.

## II.

Appellants' principal dispute is that despite recognizing that Appellants possess one-half or more Indian blood and reside on the Rancheria, Interior determined that they cannot organize as a tribe because they are "only a subset of the Indians for whom the Pinoleville Rancheria was set aside." Most problematic, in Appellants' view, is Interior's further statement that it "does not interpret the Indian Reorganization Act as permitting splinter groups or factions of a tribe to set up independent tribal government." Appellants contend that Interior improperly considered a factor from the federal acknowledgment regulations that goes beyond the criteria set forth in 25 U.S.C. § 5129 and 25 C.F.R. § 81.1(w)(2).

We disagree. By referencing the term "splinter group," Interior did not consider additional criteria, nor did it cite or reference the acknowledgement regulations. Interior's use of the phrase "splinter group" merely supported its factual finding that Appellants were "only a subset" of the Indians for whom the Rancheria was set aside. And nothing in the settlement agreement prohibited Interior from considering prior decisions that inform its interpretation of the statutory and regulatory criteria.

Moreover, substantial evidence supports Interior's conclusion that Appellants

4

are a "subset" of the Indians for whom the Rancheria was set aside. Specifically, the record reflects that the Rancheria was set aside for a particular group of Indians in 1911, that Appellants descend from some members of that original group of Indians, that Appellants (and their ancestors) participated in the Nation's extended efforts to organize as a tribe, and that Appellants (and their ancestors) participated in management of the Rancheria during the last century.

Additionally, the Nation made repeated representations to Interior that Appellants are enrolled members in the Nation. We consider this the most significant evidence supporting Interior's conclusion that Appellants constitute a subset of the Indians for whom the Rancheria was set aside. Due to the importance of those representations to Interior (and to this court), we recount them here.

On November 9, 2015, Interior released a "Verified Members List" for the putative Ukiah Valley Pomo Indians, including the names of Appellants. Soon thereafter, Interior met with senior officials of the Nation to discuss the Nation's concerns about the Verified Members List. In that meeting, the Nation's Chairwoman, Leona Williams, informed Interior that the Nation allowed Appellants to participate in tribal activities and had never issued them disenrollment letters.

On December 4, 2015, Williams sent a letter to Interior following up on the meeting. That letter stated that sixteen of the eighteen Appellants (all but Andrew Allen and Allan Crabtree) were listed on the 2003 Pinoleville Voter Membership

5

List, had not been disenrolled, and were therefore "eligible to vote as members of the Pinoleville Pomo Nation." The letter continued: "That very same Voter Membership list, created with the assistance of the Bureau in 2003, including the sixteen Verified Members, is used today to effectuate voting and membership of the Tribe. The sixteen Verified Members have not exercised their voting rights since 2005, however, they have been listed eligible to vote as members." The letter also stated, however, that the Tribal Council had not conducted any audit of the Voter Membership List or verified the membership of any specific individual.

Interior contacted the Nation to clarify Appellants' membership status because of the Nation's statement that it had not investigated the membership status of any individual. In that communication, Interior advised the Nation that determining whether Appellants were members of the Nation was "imperative" to its decision-making process.

In a February 12, 2016 telephone call, Williams informed Interior that the Nation recognized Appellants as tribal members and disputed their claims that they had been disenrolled. Over the next several days, Williams continued to communicate with Interior regarding what documentation should be submitted to demonstrate Appellants' membership in the Nation.

On February 22, 2016, Williams sent a letter to Interior containing a sworn and notarized declaration incorporating twenty-eight documents intended to provide

6

"clarification of the membership status of the plaintiffs in Donald Allen, et al. v. United States, Department of Interior." In that declaration, Williams wrote that her statement in an earlier letter that Appellants "have not applied for Pinoleville citizenship and are thus not Pinoleville citizens" was "made by mistake."[2] Among the documents incorporated into the declaration were two Pinoleville Tribal Council resolutions, passed February 17, 2016, and February 19, 2016, declaring: "Based on the Tribe's Laws the 'verified Members List' on November 9, 2015 that (16) out of (18) are members of the Pinoleville Pomo Tribe." Those resolutions also called for "the 16 tribal members" to be charged with federal crimes for representing to Interior that they were "not members of any tribe."

Under the lenient substantial evidence standard, a "reasonable mind" could accept the foregoing evidence as "adequate to support [the] conclusion" that the Rancheria was set aside for an identifiable group of Indians of which Appellants are a subset. *See San Luis & Delta-Mendota Water Auth.*, 747 F.3d at 601 (quotation marks and citation omitted).

III.

---

[2] The earlier letter, dated July 8, 2015, is also in the record. In it, Williams wrote that Appellants "have not applied for Pinoleville citizenship and are thus not Pinoleville citizens." According to that letter, because Appellants were not lineal descendants of the original Pinoleville Indians, they would have to apply for naturalization, which "could be possible." Nevertheless, in her February 22, 2016 declaration, Williams renounced those statements under "penalty of perjury."

7

We also reject Appellants' argument that even if they are a subset of the Indians for whom the land was set aside, they can still organize as a tribe because they are "among" the Indians for whom the land was set aside and constitute a majority of individuals containing one-half or more Indian blood on the Rancheria. "Tribe" is defined as, inter alia, "*the* Indians residing on one reservation," 25 U.S.C. § 5129 (emphasis added), and a group of Indians "for whom a reservation is established," 25 C.F.R. § 81.1(w)(2) (2014). The statute's use of the word "the" shows that "Indians" is meant to refer to all or, at a minimum, a significant portion of the Indians who live on the reservation and for whom the reservation was established. *See, e.g.*, *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1074 (9th Cir. 2016) ("[T]he definite article 'the' 'particularizes the subject spoken of,' suggesting that Congress meant to refer to a single object." (citation omitted)); *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002).

Unlike other instances where a reservation was set aside specifically for multiple, distinct tribes, *see Shoshone Tribe v. United States*, 299 U.S. 476, 485–86 (1937), Appellants fail to establish that the Rancheria was set aside for their group (the majority of whom are enrolled members in the Nation) in addition to the Nation.

IV.

Finally, we reject Appellants' arguments that Interior failed to follow the

8

APA's notice-and-comment rulemaking process and that Appellees fraudulently induced them to enter into the settlement agreement. Interior did not need to follow the APA's rulemaking procedures because it merely adjudicated Appellants' application and did not announce any new standard of general applicability and future effect. *See* 5 U.S.C. § 551(4). We disagree with Appellants' contention that Interior adopted new eligibility criteria or a "one-tribe-per-reservation" rule. *See Int'l Internship Prog. v. Napolitano*, 718 F.3d 986, 988 (D.C. Cir. 2013). And Appellants fail to explain how the alleged fraudulent inducement, even if true, changes the outcome of this appeal.

In sum, Interior "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43 (internal quotation marks omitted), and we will not disturb its decision.[3]

**AFFIRMED.**

---

[3] We need not address Appellants' arguments regarding the level of deference, if any, to afford Interior's decision because even absent deference, Appellants fail to establish that the decision violated the APA.