ACCEPTED
15-25-00141-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/14/2025 6:53 PM
CHRISTOPHER A. PRINE
CLERK

# NO. 15-25-00141-CV

## In the Court of Appeals

## For the Fifteenth Judicial District

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/14/2025 6:53:40 PM
CHRISTOPHER A. PRINE
Clerk

**KEN PAXTON, IN HIS OFFICIAL CAPACITY AS TEXAS ATTORNEY GENERAL**
*Appellant*

**v.**

**POWERED BY PEOPLE,**
*Appellee*

APPEAL FROM CAUSE NO. 2025DCV3641
41ST JUDICIAL DISTRICT COURT OF EL PASO COUNTY, TEXAS
THE HONORABLE ANNABELL PEREZ, PRESIDING

## APPELLEE'S BRIEF

| | |
|---|---|
| Mimi Marziani | Lynn Coyle |
| Joaquin Gonzalez | Texas Bar No. 24050049 |
| Rebecca (Beth) Stevens | 2700 Richmond Ave. |
| MARZIANI, STEVENS, AND GONZALEZ PLLC | El Paso, TX 79930 |
| 500 W. 2nd Street, Suite 1900 | lynn@coylefirm.com |
| Austin, TX 78701 | |
| mmarziani@msgpllc.com | |
| jgonzalez@msgpllc.com | |
| bstevens@msgpllc.com | |

*Counsel for Appellee*

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

Index of Authorities ................................................................................................ iii

Guide to Citations ....................................................................................................1

Statement Regarding Oral Argument ........................................................................1

Statement of the Case................................................................................................2

Issues Presented .......................................................................................................3

Statement of Facts.....................................................................................................4

Summary of the Argument........................................................................................7

Argument...................................................................................................................8

    I.     A Court Does Not Implicitly Deny a Plea to the Jurisdiction
         When It Explicitly States that the Plea to the Jurisdiction Is
         Held Open and Issues No Ruling on the Merits.............................................11

         A.     The trial court issued the TRO and targeted discovery
               without ruling on the merits....................................................13

              1.     In issuing its TRO, the trial court did not reach the
                     merits. ............................................................................13

              2.     The discovery order properly tackled jurisdictional
                     questions. .......................................................................16

          B.     This case is factually and legally analogous to City of
               Austin, and this Court should not await the outcome of that
                petition for review before applying its principles because
                they are consistent with Texas precedent. ..............................23

    II.    Appellee's Claims are Not Facially Moot, and Regardless, the
         Voluntary Cessation and Capable of Repetition Exceptions
          Both Apply. ...................................................................................28

A.    Appellee's claims seeking relief from the RTEs are not moot on their face because Appellee still seeks attorney's fees and injunctive relief. ...................................................28

B.    Both the voluntary cessation and capable of repetition exceptions apply ..............................................................32

    1.    The voluntary cessation exception applies. ....................32

    2.    The capable of repetition exception applies. .................36

Conclusion ...........................................................................................38

Certificate of Compliance .....................................................................40

Certificate of Service ...........................................................................41

# INDEX OF AUTHORITIES

| **Cases** | **Page(s)** |
|---|---|

*Abbott v. Doe*,
No. 03-22-00107-CV, 2022 WL 710093 (Tex. App.—Austin Mar. 9, 2022) (per curiam) .................................................................... 14, 28

*Abbott v. MALC*,
647 S.W.3d 681 (Tex. 2022) ..................................................... 10, 31, 32, 35

*Abbott v. Mexican Am. Legis. Caucus (MALC)*,
647 S.W.3d 681 (Tex. 2022) ..................................................................29

*Allstate Ins. Co. v. Hallman*,
159 S.W.3d 640 (Tex. 2005) .................................................................. 30, 31

*Atlas Gulf-Coast, Inc. v. Stanford*,
299 S.W.3d 356 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ..............25

*Axelson, Inc. v. McIlhany*,
798 S.W.2d 550 (Tex. 1990) (orig. proceeding) ...........................................18

*Bexar Metro. Water Dist. v. City of Bulverde*,
234 S.W.3d 126 (Tex. App.—Austin 2007, no pet.)....................................33

*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000) .....................................................................18

*Brines v. McIlhaney*,
596 S.W.2d 519 (Tex. 1980) ...................................................................13

*Butnaru v. Ford Motor Company*,
84 S.W.3d 198 (Tex. 2002) .....................................................................13

*Camarena v. Tex. Emp. Comm'n*,
754 S.W.2d 149 (Tex. 1988) .................................................................. 30, 31

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)............................................................................. 11, 29

*Cannan v. Green Oaks Apts., Ltd.*,
758 S.W.2d 753 (Tex. 1988) (per curiam) .................................................13

*City of Galveston v. Gray*,
93 S.W.3d 587 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ..................................................................................27

*City of Houston v. Griner*,
No. 14-24-00164-CV, 2024 WL 1326200 (Tex. App.—Houston [14th Dist.] Mar. 28, 2024, pet. denied) (per curiam) (mem. op.) ................27

*City of Laredo v. Rodriguez*,
No. 04-24-00093-CV, 2024 WL 950627 (Tex. App.—San Antonio Mar. 6, 2024, no pet.) (per curiam) (mem. op.) .............................27

*Commonwealth Bank & Tr. Co. v. Morris,*
77 S.W.2d 871 (Tex. 1934) ...............................................................30

*DeFunis v. Odegaard*,
416 U.S. 312 (1974) (per curiam)......................................................35

*Del Monte Fresh Produce Co. v. United States*,
570 F.3d 316 (D.C. Cir. 2009).........................................................38

*Dickson v. Am. Gen. Life Ins. Co.*,
698 S.W.3d 234 (Tex. 2024) ...............................................................8

*Empower Texans, Inc. v. Geren*,
977 F.3d 367 (5th Cir. 2020) ...........................................................37

*Entergy Gulf States, Inc. v. Summers*,
282 S.W.3d 433 (Tex.2009) ..............................................................16

*ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC*,
619 S.W.3d 628 (Tex. 2021) .............................................................29

*Fernandez v. Pimentel*,
360 S.W.3d 643 (Tex. App.—El Paso 2012) ......................................... 13, 14

*FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*,
642 S.W.3d 829 (Tex. 2022) ................................................................ 11, 12

*First Nat'l Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978)..........................................................................37

*Guad. Cnty. Sheriff's Off. v. Garcia*,
No. 13-23-00191-CV, 2013 WL 8817848 (Tex. App.—Corpus
Christi–Edinburg Dec. 21, 2023, no pet.) (mem. op.) .................................28

*Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*,
793 S.W.2d 652 (Tex.1990) ....................................................................24

*Hansen v. JP Morgan Chase Bank, N.A.*,
346 S.W.3d 769 (Tex. App.—Dallas 2011, no pet.) ...................................30

*Harrell v. State*,
286 S.W.3d 315 (Tex. 2009) ....................................................................17

*Hearts Bluff Game Ranch, Inc. v. State*,
381 S.W.3d 468 (Tex. 2012) ....................................................................17

*Heckman v. Williamson Cnty.*,
369 S.W.3d 137 (Tex. 2012) ........................................................ 28, 29, 31

*Hous. Mun. Employees Pension Sys. v. Ferrell*,
248 S.W.3d 151 (Tex. 2007) ....................................................................17

*In re Christianson Air Conditioning & Plumbing, LLC*,
639 S.W.3d 671 (Tex. 2022) ....................................................................18

*In re Cont. Freighters, Inc.*,
646 S.W.3d 810 (Tex. 2022) (per curiam) .................................................33

*In re K & L Auto Crushers, LLC*,
627 S.W.3d 239 (Tex. 2021) (orig. proceeding) ................................... 17, 18

*In re Kellogg Brown & Root, Inc.*,
166 S.W.3d 732 (Tex. 2005) ....................................................................29

*In re Powered by People and Robert Francis O'Rourke*,
(Tex. App.—15th Dist. Sept. 12, 2025) (per curiam) .................................15

*Janus Films, Inc. v. City of Fort Worth*,
358 S.W.2d 589 (Tex. 1962) (per curiam) .................................................13

*Jaster v. Comet II Const., Inc.*,
438 S.W.3d 556 (Tex. 2014) ....................................................................16

v

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016)..................................................................38

*Marshall v. Hous. Auth. of S.A.*,
198 S.W.3d 782 (Tex. 2006) .....................................................30

*Matthews ex rel. M.M. v. Kountze ISD*,
484 S.W.3d 416 (Tex. 2016) .............................................. 32, 33

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
372 S.W.3d 629 (Tex. 2012) .....................................................17

*Paxton v. Annunciation House, Inc.*,
719 S.W.3d 555 (Tex. 2025) .............................................. passim

*Paxton v. City of Austin*,
No. 15-24-00078-CV, 2024 WL 4446073 (Tex. App. [15th Dist.]
Oct. 8, 2024 pet. filed)................................................. 10, 12, 39

*Rattray v. City of Brownsville*,
662 S.W.3d 860 (Tex. 2023) .....................................................10

*Rusk State Hosp. v. McGowan*,
No. 12-24-00295-CV, 2024 WL 4644750 (Tex. App.—Tyler Oct.
31, 2024, no pet.) (per curiam) (mem. op.) ...................... 12, 25, 28

*S. Pac. Terminal Co. v. ICC*,
219 U.S. 498 (1911)..................................................................38

*SEC v. Sloan*,
436 U.S. 103 (1978)..................................................................38

*Seim v. Allstate Tex. Lloyds*,
551 S.W.3d 161 (Tex. 2018) (per curiam) ................................11

*State ex rel. Best v. Harper*,
562 S.W.3d 1 (Tex. 2018) .........................................................29

*Sun Oil Co. v. Whitaker*,
424 S.W.2d 216 (Tex. 1972) reh'g denied .................................16

*Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*,
717 S.W.3d 854 (Tex. 2025) .............................................. passim

*Tex. Dep't of Parks & Wildlife v. Miranda,*
    133 S.W.3d 217 (Tex. 2004) ...................................................... 9, 17, 18, 24

*Tex. Dep't of Pub. Safety v. Salazar,*
    No. 03-11-00206-CV, 2011 WL 1469429 (Tex. App.—Austin
    Apr. 19, 2011, no pet.) (mem. op.) ..........................................................28

*Tex. Dep't of Transp. v. Tex. Wkly. Advoc.,*
    No. 03–09–00159–CV, 2010 WL 323075 (Tex. App.—Austin
    Jan. 29, 2010, no pet.)...............................................................................30

*Tex. S. Univ. v. Young,*
    682 S.W.3d 886 (Tex. 2023) (Young, J., concurring in denial of
    petition for review) .............................................................................. passim

*Thomas v. Long,*
    207 S.W.3d 334 (Tex. 2006) ................................................................ passim

*Tom James of Dallas, Inc. v. Cobb,*
    109 S.W.3d 877 (Tex. App.—Dallas 2003, no pet.) ....................................14

*Transport Co. of Texas v. Robertson Transports, Inc.,*
    261 S.W.2d 549 (Tex. 1953) .......................................................................13

*Trevino v. City of Pearland,*
    531 S.W.3d 290 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ..............11

*Union Carbide Corp. v. B.D. Moye,*
    798 S.W.2d 792 (Tex.1990) (Hecht, J., concurring)....................................24

*United States v. Trans-Missouri Freight Ass'n,*
    166 U. S. 290 (1897)...................................................................................33

*United States v. W. T. Grant Co.,* 345 U.S. 629 (1953)............................................33

*Valentin v. Hosp. Bella Vista,*
    254 F.3d 358 (1st Cir. 2001).........................................................................9

*W. Travis Cnty. Pub. Util. Agency v. CCNG Dev. Co.,*
    514 S.W.3d 770 (Tex. App.—Austin 2017, no pet.)...................................27

*Walling v. Metcalfe,*
    863 S.W.2d 56 (Tex. 1993) ................................................................... 13, 16

*Well Solutions, Inc. v. Stafford,*
      32 S.W.3d 313 (Tex. App.—San Antonio 2000, no pet.) ............................11

*Williams v. Lara*,
      52 S.W.3d 171 (Tex. 2001) ................................................................36

*xas Aeronautics Comm'n v. Betts,*
      469 S.W.2d 394 (Tex. 1971) ..............................................................13

## Statutes

42 U.S.C. § 1988 .........................................................................................31

TEX. BUS. ORGS. CODE § 12.153 ...............................................................33

TEX. CIV. PRAC. & REM. CODE § 37.008....................................................31

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) .........................................12

## Rules

TEX. R. CIV. P. 166a(c).................................................................................24

TEX. R. CIV. P. 42(c)(1)(A) ........................................................................24

TEX. R. EVID. 401 .......................................................................................19

## GUIDE TO CITATIONS

Citations to the record are as follows: CR.___, referencing the Clerk's Record followed by the page number; SCR.___, referencing the Supplemental Clerk's Record followed by the page number; RR_.___, referencing the Reporter's Record followed by volume number, followed by the page number. Reference to Appellant's brief is App. Br. at ___.

## STATEMENT REGARDING ORAL ARGUMENT

This is an interlocutory appeal. Appellee does not believe oral argument would aid the Court in deciding this appeal. The issues in this case do not require any new interpretations of law, but application of established principles of common and statutory law to the evidence. However, if the Court determines that oral argument is necessary, Appellee requests the opportunity to participate.

**TO THE HONORABLE FIFTEENTH COURT OF APPEALS:**

Appellee Powered By People files this brief asking the Court to dismiss the Appellant's appeal for want of jurisdiction, or, in the alternative, hold that the case is not moot and remand the case to the trial court for further proceedings. In support, Appellee respectfully shows the following:

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case:* | This is a constitutional challenge to Appellant's investigation and prosecution of Appellee. It also seeks a protective order, under TEX. R. CIV. P. 176.6 and 192.6, regarding Appellant's Request to Examine Appellee's business records ("RTE"). |
| *Course of Proceedings:* | After Appellee filed the instant suit, seeking injunctive and declaratory relief and fees, the Attorney General claimed to voluntarily withdraw its RTE, then filed a plea to the jurisdiction and plea in abatement. CR.47. Appellee amended its petition to add a request for injunctive relief related to prospective *quo warranto* proceedings. CR.377. |
| *Trial Court's Disposition:* | The district court issued a temporary restraining order ruling that Appellee was likely to succeed on the merits of its claims. CR.559. The district court later ordered discovery in advance of the scheduled temporary injunction hearing. CR.948. |

# ISSUES PRESENTED

1.  Whether this is a proper interlocutory appeal of an "implicit" denial of a plea to the jurisdiction given that the trial court explicitly held open Appellant's Plea for further briefing and argument, issued only a temporary preliminary order to maintain the status quo, and ordered discovery that would bear on the sole jurisdictional question Appellant has raised, namely mootness?

2.  If this Court does consider the merits of Appellant's Plea to the Jurisdiction, whether the case is moot given that the RTE at issue could be reissued, that Appellee has live claims for declaratory relief with available attorneys' fees, and live claims for injunctive and declaratory relief in addition to those related to the RTE?

## STATEMENT OF FACTS

On August 6, 2025, Appellant launched a retaliatory and unlawful investigation into Appellee, Powered by People, by serving two of its board members, Mr. David Wysong and Ms. Gwen Pulido, in El Paso with an RTE seeking reams of sensitive and burdensome information, due in less than 48 hours' time. CR.37-46. While the Attorney General's office issued a press release that day claiming that it was investigating "unlawful activity, including potentially operating an illegal financial influence scheme to bribe runaway Democrats who fled Texas to break quorum," CR.12, General Paxton admitted publicly that same day that he had no "details" to support his allegations; rather, he planned to use the "investigation" to "find out if they've done anything inappropriate." CR.8. Indeed, despite repeatedly accusing Appellant and its founder, Beto O'Rourke, of potentially violating bribery laws and committing other crimes, the Attorney General's office has never produced any concrete, particularized allegations to support these charges, pointing only to Appellant's protected political speech, organizing, and advocacy. Appellee filed the underlying case, seeking a protective order against the RTE, declaratory and injunctive relief, and attorneys' fees shortly before the RTE deadline on August 8, 2025. CR.8. The central theory of Appellee's lawsuit is that Appellant—led by Attorney General Ken Paxton—is abusing state power to retaliate against Powered by People for its disfavored speech and political association, and is

4

attempting to chill the speech of Mr. O'Rourke in particular, as he has been identified by General Paxton as a potential opponent in the 2026 Senate race.

Also on Friday, August 8, 2025, Appellant brought a Deceptive Trade Practices Act ("DTPA") case against Appellee and Mr. O'Rourke in Tarrant County. CR.85. Appellant obtained a temporary restraining order against Appellee and Mr. O'Rourke that same day. CR.106-08. The next day, on August 9, 2025, counsel for Appellant indicated that "effective immediately" it was withdrawing the RTE, and asked counsel for Appellee to dismiss the action in the El Paso trial court. CR.110.

Just two days later, on August 11, 2025, despite being unconnected to the DTPA claim, Appellant's counsel indicated that they would be immediately seeking to institute *quo warranto* proceedings against Appellee in Tarrant County, where there exists no colorable argument that venue is proper for such a proceeding. CR.116. Appellee amended its petition to include requests for declaratory and injunctive relief with respect to the *quo warranto* proceeding, as well as the RTE. CR.114-40.

On August 18, 2025, the El Paso trial court held a hearing on Appellant's plea to the jurisdiction and plea in abatement as well as Appellee's motion for TRO regarding prosecuting *quo warranto* proceedings without leave of an El Paso County court. During the hearing, the trial court made no indication of its position with respect to the merits of any claims, and rather explained that the court was "going to

5

consider…the TRO in light of the jurisdictional questions that are present." RR3.55. Consistent with the trial court's statements during the hearing, an order was issued the following day, stating that it was not a "ruling on the merits or a ruling on the Court's jurisdiction." CR.559. The trial court set a deadline for Appellant to file a reply brief to support its plea and then set a temporary injunction hearing for August 29, 2025. CR.559; CR.564.

The next day, on August 20, 2025, Appellee filed a motion for expedited discovery in advance of the August 29, 2025 hearing, explaining that "the investigations and threatened actions that are the basis of this suit are for retaliatory purposes against a perceived political opponent based on that opponent's political speech," and that threatened harm remained imminent. SCR.4-5. On August 21, 2025, the El Paso trial court held a hearing on Appellee's motion for expedited discovery. At the hearing, the trial court stated that Appellant's "plea to the jurisdiction has not been ruled on" and the trial court would "stay merit discovery," and asked the parties to provide authority related to the question of whether discovery could issue. RR4.24-25. In its subsequent notice to the court, Appellee explicitly noted that "to the extent Defendant tries to claim that Plaintiff's discovery request improperly goes to the merits, the discovery requested here is also pertinent to issues of mootness and other arguments raised by Defendant in the plea to the jurisdiction, which are still under consideration by this Court." CR.944.

On August 22, 2025, the trial court ordered targeted discovery. CR.948; *cf.* RR4.25. Immediately, and despite the fact the trial court had expressly stayed merits discovery and held the plea to the jurisdiction open, Appellant noticed the present appeal based on an alleged implicit denial of the plea to the jurisdiction, automatically staying the district court proceedings pursuant to Texas Civil Practices and Remedies Code § 51.014(b). CR.951.

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction because the trial court neither explicitly nor implicitly denied the State's plea to the jurisdiction. The court's TRO expressly stated it was not a merits ruling and that the plea remained "held open." The court then set targeted, jurisdiction-focused discovery and additional briefing. Actions that preserve the status quo or develop jurisdictional facts—such as issuing a TRO or permitting narrowly tailored discovery—are not merits rulings and cannot be bootstrapped into an "implicit denial." This is confirmed by decades of precedent, whereas Appellant's primary authority, *Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006) is inapposite because, there, the court decided summary judgment on the merits while remaining silent on the plea; here the trial court did the opposite— expressly reserved the plea and avoided any merits ruling. The appeal should be dismissed for want of jurisdiction.

7

Even if the trial court had denied the plea, such a ruling would be correct because the case is not moot. Effectual relief remains available: (1) the Attorney General can re-issue Requests to Examine, so prospective relief still matters; (2) Appellee seeks attorney's fees authorized by statute, which independently keeps the controversy live; and (3) Appellee seeks injunctions concerning threatened *quo warranto* proceedings that are independent of the withdrawn RTE. The voluntary-cessation doctrine and the capable-of-repetition-yet-evading-review exception both apply on these facts.

The trial court acted well within its discretion to sequence proceedings: it preserved the status quo and permitted targeted discovery "essential to the resolution" of jurisdictional questions before resolving the plea. That is exactly what Texas law contemplates when jurisdictional facts intertwine with the merits. The interlocutory appeal should therefore be dismissed; but, if this Court reaches Appellant's plea to the jurisdiction, it should be denied because the case is not moot.

## ARGUMENT

As Appellant points out, "no court of this State should be *presumed* to undertake the unlawful and ultra vires action of reaching a merits issue without resolving a contested issue of jurisdiction." App. Br. at 22 (citing *Dickson v. Am. Gen. Life Ins. Co.*, 698 S.W.3d 234, 236 n.2 (Tex. 2024) (Young, J., concurring in the denial of the petition for review)) (emphasis added). Yet Appellant demands

8

exactly that presumption. On multiple occasions, Appellant replaces the trial court's explicit words with its own conclusory statements to argue that the court implicitly denied Appellant's plea to the jurisdiction by reaching a merits issue. The record, as supported by case law, proves otherwise. In fact, the trial court followed decades of precedent when it issued a Temporary Restraining Order (TRO) to preserve the status quo, ordered targeted discovery intended to inform the subsequent temporary injunction hearing and factual issues that inform the jurisdictional questions raised, and asked for additional briefing on Appellant's plea to the jurisdiction — all in the span of two weeks. It is well within the trial court's discretion to preside over preliminary matters, while still "determin[ing] at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Indeed, "in certain situations, the predicate facts can be so inextricably linked to the merits of the controversy that the district court may 'defer resolution of the jurisdictional issue until the time of trial.'" *Id.* (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 n. 3 (1st Cir. 2001).

What the trial court did not do was rule on any interlocutory order that would provide this Court jurisdiction for appellate review. On the contrary, on August 19, 2025, the trial court issued a TRO expressly stating that:

> The Court issues this Order to prevent imminent, irreparable injury, and ***this Order expressly is not a ruling on the merits or a ruling o[n] the***

9

> ***Court's jurisdiction. Defendants' Plea to the Jurisdiction is held open for further consideration by this Court****. Plaintiffs filed a response brief on the Plea to the Jurisdiction on August 18, 2025. Defendants may submit a reply within 7 days of today's order.*

CR.559 (emphasis added). The trial court's intent could not be clearer: the plea to the jurisdiction was still held open (indeed, it was still being briefed) when Appellant filed their notice of appeal on August 22, 2025. Appellant largely ignores this fact and asks this Court to do the same. Yet, Appellant cannot point to a single case where a Court of Appeals found an implicit denial when a trial court expressly held open a plea to the jurisdiction. Instead, Appellant's argument rests solely on one case, *Thomas,* which, when applied to the present facts, only bolsters the conclusion that there has *not been* an implicit denial of the plea to the jurisdiction.

Because there has been no explicit or implicit denial of the plea to the jurisdiction, this Court should "dismiss this interlocutory appeal for want of jurisdiction due to the lack of an appealable order either granting or denying the Attorney General's plea to the jurisdiction." *See Paxton v. City of Austin*, No. 15-24-00078-CV, 2024 WL 4446073, at *3 (Tex. App. [15th Dist.] Oct. 8, 2024 pet. filed) (citing *Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023)).

But even if the trial court had denied Appellant's plea to the jurisdiction, such denial would have been proper because this case is not moot. A case is not moot unless it is "*impossible* for a court to grant *any* effectual relief whatever to the prevailing party." *Abbott v. MALC*, 647 S.W.3d 681, 689 (Tex. 2022) (quoting

10

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)) (emphasis in original). Because the Requests to Examine (RTEs) could still be reissued at any time, *see Paxton v. Annunciation House, Inc.*, 719 S.W.3d 555, 590 (Tex. 2025), and, crucially, because Appellee seeks attorney's fees and injunctive relief regarding *quo warranto* proceedings separate from the RTEs, a judgment in Appellee's favor would grant effectual relief.

## I. A Court Does Not Implicitly Deny a Plea to the Jurisdiction When It Explicitly States that the Plea to the Jurisdiction Is Held Open and Issues No Ruling on the Merits.

An implicit ruling is "one that, though unspoken, reasonably can be inferred from something else." *Trevino v. City of Pearland*, 531 S.W.3d 290, 299 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex. App.—San Antonio 2000, no pet.) ("A ruling is implicit if it is unexpressed but capable of being understood from something else."). The threshold for such an inference is no low bar, and the "ruling may be implied only if the implication was clear[.]" *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (quoting *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam)) (internal quotation marks omitted). Appellants proffer one case, *Thomas,* to establish their claim that there has been an implicit ruling here. App. Br. at 20, 23, 27 (citing *Thomas v. Long*, 207 S.W.3d 334 (Tex. 2006)). In *Thomas*, the Court found a reasonable inference of an implicit denial

11

existed when the trial court remained silent on the plea to the jurisdiction but made a ruling that was clearly on the merits by deciding a summary judgment motion. 207 S.W.3d at 339. Of course, drawing such an inference becomes impossible when it contradicts the explicit statements and orders of the trial court, including when the trial court has "expressly declined to rule on the plea to the jurisdiction, reserving a ruling for a later date." *Rusk State Hosp. v. McGowan*, No. 12-24-00295-CV, 2024 WL 4644750, at *2–*3 (Tex. App.—Tyler Oct. 31, 2024, no pet.) (per curiam) (mem. op.)*; see also City of Austin*, 2024 WL 4446073, at *1-*2.

That is precisely the case here. The trial court followed decades of Texas jurisprudence in reaching its conclusion that a TRO was warranted, and by ordering targeted discovery that is "essential to the resolution of [a] jurisdictional question" as well as relevant to the question of temporary relief. *Tex. S. Univ. v. Young*, 682 S.W.3d 886, 889 (Tex. 2023) (Young, J., concurring in denial of petition for review). The orders serve to preserve the status quo and facilitate the trial court's determination of subject matter jurisdiction. The only "implication [that] was clear" was that the trial court did not, and has not, ruled on the plea to the jurisdiction. *FieldTurf*, 642 S.W.3d at 837 (internal quotation omitted). Thus, there has been no implicit denial of the plea to the jurisdiction and Appellant lacks the right to bring this interlocutory appeal. *Cf.* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

### A. The trial court issued the TRO and targeted discovery without ruling on the merits.

#### 1. In issuing its TRO, the trial court did not reach the merits.

"A TRO is entered when a motion for temporary injunction is pending." *Fernandez v. Pimentel*, 360 S.W.3d 643, 646 (Tex. App.—El Paso 2012); *see also Brines v. McIlhaney*, 596 S.W.2d 519, 523 (Tex. 1980) ("A temporary restraining order is one entered as part of a motion for a temporary injunction, by which a party is restrained pending the hearing of the motion."). The purpose of both a TRO and a temporary injunction is to preserve the status quo between the parties until trial or a later date in the proceedings. *Cannan v. Green Oaks Apts., Ltd.,* 758 S.W.2d 753, 755 (Tex. 1988) (per curiam) (citing *Transport Co. of Texas v. Robertson Transports, Inc.,* 261 S.W.2d 549, 552 (Tex. 1953)); *see also Texas Aeronautics Comm'n v. Betts,* 469 S.W.2d 394, 398 (Tex. 1971) ("A temporary restraining order and, after notice and hearing, a temporary injunction may be granted for the purpose of maintaining the status quo." (citing *Janus Films, Inc. v. City of Fort Worth,* 358 S.W.2d 589 (Tex. 1962) (per curiam))); *Butnaru v. Ford Motor Company*, 84 S.W.3d 198, 204 (Tex. 2002).

As a general matter, both TROs and temporary injunctions are extraordinary remedies that do not issue as a matter of right. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). "[T]he legal issues before the trial court at a temporary injunction

13

hearing are whether the applicant showed a probability of success and irreparable injury; the underlying merits of the controversy are not presented." *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.). Because a TRO is merely a precursor to a temporary injunction and requires a similar showing, it similarly does not constitute a ruling on the merits. *Pimentel*, 360 S.W.3d at 646-47; *Abbott v. Doe*, No. 03-22-00107-CV, 2022 WL 710093, at *2 (Tex. App.—Austin Mar. 9, 2022) (per curiam) ("[A] court does not necessarily reach the merits of a party's claims by concluding that an applicant has made that preliminary showing and is entitled to a TRO."). Moreover, it is well-settled that granting temporary relief does not necessarily constitute an implicit denial of a plea to the jurisdiction. *See, e.g., Doe*, 2022 WL 710093, at *2 ("This Court has refused to extend *Thomas* to hold that trial courts impliedly deny pleas to the jurisdiction by taking actions that do not reach the merits.")

Here, the trial court followed the analysis described above, issuing a TRO "to preserve the status quo until a hearing . . . to prevent imminent, irreparable injury" and explaining that the order was "expressly [] not a ruling on the merits" and that Appellee had shown "a ***probable*** right to relief" on several of its claims. CR.559 (emphasis added); *see generally* CR.559-564. Appellant does not — indeed, cannot — point to a single case or legal argument to explain why the trial court order in fact constituted a merits ruling, contrary to the trial court's explicit statements otherwise.

14

To be sure, it is possible that a trial court could make a merits ruling in a preliminary order. For example, this Court recently examined the Tarrant County trial court's TRO in connection with the DTPA lawsuit brought by the Attorney General's Office against Appellee and Mr. O'Rourke, and found that the conclusory language used in that TRO did not constitute "findings of likely success on the merits [but rather] resolutions of the merits." *In re Powered by People and Robert Francis O'Rourke*, Order on Motion for Emergency Relief, at 14 (Tex. App.—15th Dist. Sept. 12, 2025) (per curiam). Unlike the TRO set out by the Tarrant County trial court, the TRO in this case was couched in language typical to a TRO and expressly stated it was not a ruling on the merits. *See* CR.559 (finding only a "probable right to relief," not a full finding of liability). Thus, in issuing the TRO, the trial court here followed the well established procedure of entering an order to maintain the status quo while reserving the issue of jurisdiction for a later time.

Appellants' argument would create a conflict with binding precedent, which requires courts to consider a probable right to relief in issuing preliminary injunctive orders. Specifically, Appellant argues that "[w]hile not all temporary restraining orders rule on the merits of parties' claims, this one certainly did [because] . . . the court repeatedly ruled that Appellee had a probable right to relief on its claims." App. Br. at 24. If Appellant's argument is accepted, trial courts could never order temporary emergency relief without making an implicit ruling on jurisdiction

15

because "the probable right to relief" must always be considered in ordering emergency relief. *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1972) reh'g denied.

Appellant provides no explanation for why this Court should upend decades of precedent and develop a novel standard for evaluating TROs. Nor do they themselves offer an alternative standard, much less a workable one. The practical result of Appellant's position would be that the State is effectively insulated from TROs so long as it lobs a plea to the jurisdiction onto the court's docket. Then, despite express statements to the contrary by a trial court, the State could claim an "implicit denial" as soon as any temporary injunctive relief was ordered and stay any further trial court proceedings. Had the Legislature intended such a consequence, it could have given a right of interlocutory appeal with automatic stay for TROs in the same way it did for pleas to the jurisdiction. It has not done so, and courts must "refrain from rewriting text that lawmakers chose." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex.2009)).

### 2. The discovery order properly tackled jurisdictional questions.

Discovery is not invariably tethered only to the merits and is not categorically unavailable upon a challenge to a trial court's subject-matter jurisdiction. *Tex. S.*

16

*Univ.*, 682 S.W.3d at 888 (Young, J., concurring).  Because "[c]ourts always have jurisdiction to determine their own jurisdiction," *Harrell v. State*, 286 S.W.3d 315, 317 (Tex. 2009) (quoting *Hous. Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex.  2007)), trial courts "have broad discretion to allow 'reasonable opportunity for targeted discovery' and to grant parties more time to gather evidence and prepare for such hearings.'" *Texas S. Univ.*, 682 S.W.3d at 888 (Young, J., concurring) (quoting in part *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 642–43 (Tex. 2012)). And "[b]ecause courts should determine whether they have jurisdiction as early as practicable, courts should allow [for such discovery] if necessary to illuminate jurisdictional facts in a plea to the jurisdiction." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012) (quoting *Miranda*, 133 S.W.3d at 233).

"[T]he purpose of discovery is to enable courts to decide disputes based on what the facts reveal, not by what facts are concealed." *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 248 (Tex. 2021) (orig. proceeding) (cleaned up). Thus, a "court can consider evidence as necessary to resolve any dispute" when a party challenges jurisdiction. *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 642. If the Court lacks the "evidence to resolve a jurisdictional fact question and thus to rule on the plea to the jurisdiction, [it] may order targeted discovery" and such "discovery is "not a transgression of a court's subject-matter jurisdiction [rather] it is how a

17

court ensures that no such transgression occurs." *Texas S. Univ.*, 682 S.W.3d at 888-89 (Young, J., concurring).

In evaluating the propriety of such discovery, the "rules must be 'liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial.'" *In re K & L Auto Crushers*, 627 S.W.3d at 251 (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding)). It follows then that jurisdictional discovery need not relate exclusively to jurisdictional questions and "may overlap with merits issues in certain circumstances." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 677 (Tex. 2022); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000) (comparing evidentiary inquiry to establish personal jurisdiction with similar inquiries — such as challenges to standing — that serve as "prerequisite[s] to the plaintiff's presentation of its substantive claims"); *Miranda*, 133 S.W.3d at 226 ("[D]isputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact.").

Thus, a trial court has broad discretion to order jurisdictional discovery, and such an order "would be a clear abuse of discretion only if it necessarily trespasses so far into the merits that any tether to pending jurisdictional questions was illusory or pretextual." *Texas S. Univ.*, 682 S.W.3d at 889. As explained below, the discovery

18

ordered by the trial court here would obviously further resolution of the pending jurisdictional questions.

"The Attorney General's plea to the jurisdiction raises one issue: Mootness." App. Brief at 25. Appellant's position, both on appeal and before the trial court, is that its purported withdrawal of the RTE mooted the case. *See, e.g.*, CR.47-59. Appellee argues instead that retaliation is ongoing and remains a live concern, particularly because General Paxton views Mr. O'Rourke as a potential political opponent and has been abusing the power of his office to silence Mr. O'Rourke, Appellee and their supporters. Part of that ongoing retaliation is Appellant's attempt to bring a baseless *quo warranto* action against Appellee in Tarrant County; protection from that *quo warranto* was also meant to be the subject of the August 29, 2025 temporary injunction hearing.

The discovery sought by Appellee and ordered by the trial court was clearly relevant to this question of mootness – it sought evidence that would assist in evaluating whether disputed facts "of consequence in determining" the jurisdictional issue of mootness are "more or less probable," TEX. R. EVID. 401, by providing additional information about the intent of Appellant and of Ken Paxton's senate campaign in initiating an investigation against Appellee. For instance, Appellee sought and the trial court ordered document discovery including:

- "All documents establishing the timeline of the investigation, including intake records, complaint logs, assignment of personnel, and milestone documents that would show whether the investigation was initiated or escalated in response to political events or pressures."

- "Any and all documents or communications in your possession, custody, or control before August 6, 2025 that would form the basis for any purported allegation of criminal or deceptive conduct by Powered by People and that could have informed your decision to serve Requests to Examine on members of the Board of Powered by People."

- "All non-privileged e-mails and messages between any member of the Office of Attorney General, Consumer Protection Division and any third party from August 1, 2025 to date related to Powered By People, Robert Francis O' Rourke (or "Beto" O'Rourke), the Requests to Examine, or the Motion for Leave to File Information in the Nature of Quo Warranto against Powered by People in Tarrant County."

- "Produce documents and communications discussing, or relating to Defendant Paxton's discussion of Mr. O'Rourke as a political opponent. This request also includes e-mails and messages."

- "Produce documents and communications between the Attorney General's Office and the Ken Paxton for U.S. Senate Campaign relating to Powered by

People and/or Mr. O'Rourke. This request also includes e-mails and messages."

SCR.10-11. Appellee also sought and was granted a two-hour deposition of a corporate representative of the Attorney General's office, as well as a two-hour deposition of Ken Paxton, in his candidate capacity, given that he has repeatedly posted materials on his personal/candidate social media accounts indicating that the basis of the investigation was, in fact, retaliatory and illicit. CR.948. Although General Paxton attempted to disclaim the RTEs once it appeared he might gain access to those documents through his separate Tarrant County litigation, his intent in initiating the investigation in the first place would certainly bear on whether he will re-attempt investigation in the future, and hence will go towards answering the mootness inquiry.

Further, while Appellants claim that the order for "discovery did not even purport to be jurisdictional," App. Br. at 25, the Court explicitly noted it *"stay[ed]* merit discovery -- merit-based discovery.*"* RR4.24. The facts here are akin to *Tex. S. Univ.,* where, in connection with the impending dismissal of Texas Southern University's (TSU) chief of police, the trial court ordered TSU to turn over documents related to the pre-dismissal investigation. 682 S.W.3d at 887 (Young, J., concurring). The trial court also ordered the depositions of both TSU's President and the auditor responsible for the investigation into the chief. *Id.* On appeal, the Texas

Supreme Court denied the University's petition for review and petition for writ of mandamus. *Id.* at 886. In his concurring opinion, Justice Young explained that "if understood apart from its context, this discovery order *could* be viewed as overbroad and beyond what is needed to determine the court's jurisdiction to hear the suit" but an order into discovery must not be viewed in a vacuum when "[e]veryone knows its jurisdictional purpose." *Id.* at 889 (Young, J., concurring). With that context in mind, Justice Young wrote, "we cannot assume that any apparent imprecision or breadth reflects a trial court's intent to ignore jurisdiction and address the merits" and, further, that a "trial court who issued an order in good faith only to determine its own jurisdiction would not permit that order to be abused." *Id.* at 889-890 (Young, J., concurring).

As in *Tex. S. Univ.,* the trial court here ordered document discovery and the depositions of the individuals responsible for the investigation into Appellee. And similarly, "everyone knows its jurisdictional purpose." *Id.* at 889 (Young, J., concurring). The ordered discovery clearly would have produced answers to the pending jurisdictional questions,[1] bearing on whether Appellants' weaponized

---

[1] There are instances where a party may seek improper discovery from an order that does not inherently venture impermissibly into merits discovery. In such a situation, the State's first act should fall "far short of immediately noticing an appeal or seeking mandamus relief." *Id.* at 890 (Young, J., concurring). For example, where "an adverse party…seeks to leverage permissible *jurisdictional* discovery into clearly impermissible *merits* discovery, the other [party] (in this case, the State) may seek [from the trial court] a protective order, resist a motion to compel, or take similar steps." *Id.*

22

investigations will continue in myriad forms, thus going towards the question of mootness.

**B.  This case is factually and legally analogous to City of Austin, and this Court should not await the outcome of that petition for review before applying its principles because they are consistent with Texas precedent.**

In *City of Austin*, this Court explained that "our record does not contain any merits order that could be construed as an implicit denial of the plea to the jurisdiction as the court did in *Thomas*," 2024 WL 4446073, at *2, before concluding that "[b]ecause the trial court has not ruled on the plea, we do not reach Appellees' argument with respect to whether the subjects of the Attorney General's plea to the jurisdiction properly qualify as jurisdictional challenges." *Id.* at *3. Contrary to Appellant's assertions to the contrary, *City of Austin* is squarely applicable to the present facts where the trial court expressly held the plea to the jurisdiction open for further consideration and did not issue a merits ruling. CR.559.

Again, here the trial court wrote: "this Order expressly is not a ruling on the merits or a ruling on the Court's jurisdiction. Defendants' Plea to the Jurisdiction is held open for further consideration by this Court." *Id.* That the plea for jurisdiction has not been ruled on (implicitly or explicitly) is crystal clear. Yet, Appellant characterizes the Order as the trial judge having "nominally claimed" not to have ruled on the merits or on jurisdiction. App. Br. at 27. Appellant thus asserts the trial

23

court's written (and spoken[2]) words have no substance and claims the power to replace those words with their own. Appellant attempts similar obfuscation with regards to the trial court's order for discovery.[3]

If Appellant can replace their words for those of the Court and unilaterally claim that a trial court implicitly decided a plea when the trial court explicitly says it did not, it would severely undercut the "the wise exercise of discretion by the trial court." *Miranda*, 133 S.W.3d at 229 (quoting *Union Carbide Corp. v. B.D. Moye*, 798 S.W.2d 792, 794 (Tex.1990) (Hecht, J., concurring) and citing, as examples of the trial court's wide-ranging docket management discretion, Tex. R. Civ. P. 42(c)(1)(A), Tex. R. Civ. P. 166a(c) and *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990)).

---

[2] During the hearing on Appellee's discovery motion, the trial court stated that "…the plea to the jurisdiction has not been ruled on." RR4.24.

[3] Appellants claim that "Appellee and the court made clear that the ordered discovery's purpose was to gather evidence of the merits." App. Br. at 25. But during the hearing on Appellee's expedited motion for discovery, the trial court stated that it had "stay[ed]…merit-based discovery" and counsel for Appellee's agreed that what it sought was "not merits discovery" before explaining to the court that there is authority to support the fact that a "TRO is not a ruling on the merits, which is the reason why discovery can proceed on [an] expedited narrow basis." RR4.24-25. The trial court asked counsel for Appellee to provide case law to support the notion that discovery may proceed while there is a pending plea to the jurisdiction. RR4.25. Accordingly, Appellee filed a Notice to the Court with relevant case law, and noting "to the extent [Appellant] tries to claim that [Appellee's] discovery request improperly goes to the merits, the discovery requested here is…pertinent to issues of mootness and other arguments raised by [Appellant] in the plea to the jurisdiction, which are still under consideration by this Court." CR.944. Contrary to Appellant's claims, the only purpose made clear by Appellee and by the trial court was that the ordered discovery was not aimed at gathering evidence on the merits, but rather on jurisdictional issues like mootness.

Because there is no authority to support Appellant's arguments, Appellant parses words in order to establish a new standard unsupported by precedent, arguing that, because the trial court did not expressly *refuse* to rule on the plea, its actions constituted an implicit denial of the plea. To the contrary, the trial court did in fact expressly decline to rule on the plea *and* held it open for further consideration — the court even set a briefing schedule for Appellant to further develop the State's position. CR.830; *see also Rusk State Hosp,* 2024 WL 4644750, at *2–*3 (determining the trial court did not implicitly deny a plea to the jurisdiction when it expressly stated that it had neither denied nor ruled upon the pending plea and indicated its intent to rule on the plea in the future). And nowhere in *City of Austin*, *Thomas,* or any case across the state of Texas has a court articulated the proposition that an express *refusal* to rule on the plea to the jurisdiction is necessary for surviving Appellant's seemingly endless standards for evaluating whether a court has implicitly denied a plea to the jurisdiction.

An appellate court's jurisdiction to entertain an interlocutory appeal is proper only under a statutory exception, which "must [be] strictly construe[d]." *Atlas Gulf-Coast, Inc. v. Stanford*, 299 S.W.3d 356, 359 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Appellant apparently does not agree. They intend to stretch the statutory exception to meet their needs, and they point to a single case to do so: *Thomas*, wherein the Texas Supreme Court found that the trial court implicitly

25

denied jurisdictional challenges in the act of making ***merits-based*** decisions on cross summary judgment motions while remaining ***silent*** on the jurisdictional challenges in one of the  motions. *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006). Such crucially distinguishing facts from the present case cannot be ignored, because though the trial court here did not make any merits rulings — and made that clear in both its order and during the hearings — it is also indisputable that the trial court was not silent on the plea to the jurisdiction. *See* CR.559 ("Defendants' Plea to the Jurisdiction is held open for further consideration by this Court."). Consistent with all precedent on this issue, the Court in *Thomas* never articulated Appellant's position that the act of taking a plea to the jurisdiction under advisement could constitute an implied denial of the plea to the jurisdiction and provide an appellate court with interlocutory jurisdiction.

Instead, *City of Austin* applies to the present case. There are no merits rulings to review, and the plea to the jurisdiction has been explicitly held open. Thus, there exists no interlocutory jurisdiction.

Moreover, this Court should not await the outcome of the *City of Austin's* appeal as its petition for review has not been granted and there is ample established precedent on the same or similar principles regarding implicit denial of pleas to the jurisdiction from appellate courts across Texas to dismiss this appeal. *See W. Travis Cnty. Pub. Util. Agency v. CCNG Dev. Co.*, 514 S.W.3d 770, 776 (Tex. App.—

26

Austin 2017, no pet.) ("Because the trial court has yet to enter an order that grants or denies the Agency's jurisdictional challenge, we lack subject-matter jurisdiction over this interlocutory appeal."); *see also City of Galveston v. Gray*, 93 S.W.3d 587, 589 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("[I]nstead, the trial court specifically stated it was not ruling on the pleas to the jurisdiction, but was granting Gray's motion for continuance and allowing discovery. Because there is no order denying the pleas to the jurisdiction from which to appeal, we do not have jurisdiction over this interlocutory appeal. Therefore, the city and the county's appeal is dismissed for want of jurisdiction." (footnote omitted)); *City of Houston v. Griner*, No. 14-24-00164-CV, 2024 WL 1326200, at *1 (Tex. App.—Houston [14th Dist.] Mar. 28, 2024, pet. denied) (per curiam) (mem. op.) (concluding the court lacked jurisdiction under Section 51.014(a)(8) when "[t]he most that can be said is that the trial court was allowing a jury trial to proceed while the motions [challenging jurisdiction] were pending"); *City of Laredo v. Rodriguez*, No. 04-24-00093-CV, 2024 WL 950627, at *1–2 (Tex. App.—San Antonio Mar. 6, 2024, no pet.) (per curiam) (mem. op.) (dismissing appeal for want of jurisdiction because there was no implicit denial of plea to the jurisdiction when the trial court order expressly abated a ruling on the plea until a later date and granted a continuance to conduct additional discovery on jurisdictional issues); *Guad. Cnty. Sheriff's Off. v. Garcia*, No. 13-23-00191-CV, 2013 WL 8817848, at *2 (Tex. App.—Corpus Christi–Edinburg Dec.

27

21, 2023, no pet.) (mem. op.) ("[T]he trial court did not rule on the merits of any issue; therefore, its order [continuing a plea to the jurisdiction hearing] does not constitute an implicit denial of the plea to the jurisdiction."); *Rusk State Hosp,* 2024 WL 4644750, at *2–*3 (concluding the appellate court lacked jurisdiction over the appeal when the trial court expressly stated that it had neither denied the pending plea nor ruled on it and indicated its intent to rule on the plea in the future did not constitute an implicit rule on the plea); *Tex. Dep't of Pub. Safety v. Salazar,* No. 03-11-00206-CV, 2011 WL 1469429, at *1 (Tex. App.—Austin Apr. 19, 2011, no pet.) (mem. op.) (trial court's order granting motion for continuance of governmental unit's plea to the jurisdiction and allowing additional discovery did not constitute implicit denial of plea); *Abbott v. Doe*, 2022 WL 710093, at *2–3 (holding that the court could not infer an implicit denial of the plea to the jurisdiction from the granting of a TRO).

II. **Appellee's Claims are Not Facially Moot, and Regardless, the Voluntary Cessation and Capable of Repetition Exceptions Both Apply.**

   A. **Appellee's claims seeking relief from the RTEs are not moot on their face because Appellee still seeks attorney's fees and injunctive relief.**

There is no credible argument that this case is moot. A case becomes moot if "the court's action on the merits cannot affect the parties' rights or interests." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012). But "mootness is difficult to establish," whereas the threshold for judicial resolution is both less

28

demanding and binary, and a controversy remains live unless "intervening events make it '*impossible* for a court to grant *any* effectual relief whatever to the prevailing party.'" *Abbott v. Mexican Am. Legis. Caucus (MALC)*, 647 S.W.3d 681, 689 (Tex. 2022) (emphasis in original) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)). Relief that achieves a "practical effect" will suffice as effectual. *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 875 (Tex. 2025) (stating that "relief must have a 'practical' effect") (quoting *ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC,* 619 S.W.3d 628, 639 (Tex. 2021)).

And "[o]nce it is established that the relief would be effectual if granted—that it would resolve a live dispute and affect the plaintiff's rights—*then* [the Texas Supreme Court] will refuse to find a case moot *unless* it is 'impossible' for the court to award that kind of relief." *Id.* Nor is a case "rendered moot simply because *some of the issues* become moot." *Id.* at 877 (emphasis in original) (quotation marks omitted) (quoting *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005)). "Rather, '[i]f only some claims or issues become moot, the case remains "live," at least as to other claims or issues that are not moot.'" *Id.* (alteration in original) (quoting *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018)); *see also, e.g., Heckman,* 369 S.W.3d at 167 ("[I]f even one issue remains live between defendants and the putative class, the suit as a whole is not moot."); *Commonwealth*

29

*Bank & Tr. Co. v. Morris,* 77 S.W.2d 871, 871 (Tex. 1934) (reviewing a challenge to a statute and explaining that "since this question [was] the sole one certified in this case, the cause as it exist[ed] in this court [was] moot.").

For example, "the issue that animated a lawsuit may become moot, but if a statute entitles a litigant to fees based on the merit of the claim, what *seems* like a moot case may remain live." *Grassroots*, 717 S.W.3d at 877; *see also Marshall v. Hous. Auth. of S.A.*, 198 S.W.3d 782, 790 (Tex. 2006) ("[I]n some instances a case is not moot even though the only issue presented relates to court costs."). Thus, even in an otherwise moot appeal, a live controversy is preserved so long as a party "ha[s] a legally cognizable interest in recovering their attorney's fees and costs." *Camarena v. Tex. Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) ("Due to the existence of the 'live' issue of attorney's fees and costs, we hold that the suit was not moot."); *see also Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642–43 (Tex. 2005) (holding that a dispute concerning attorney's fees preserved a live controversy in an otherwise moot appeal); *Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 774 (Tex. App.—Dallas 2011, no pet.) (same, relying on *Hallman*); *Tex. Dep't of Transp. v. Tex. Wkly. Advoc.*, No. 03–09–00159–CV, 2010 WL 323075, at *3 (Tex. App.—Austin Jan. 29, 2010, no pet.) (same).

It is indisputable that this case and its associated claims remain live. Appellee seeks declaratory relief and corresponding reasonable and necessary attorneys' fees

related to the present litigation and pursuant to 42 U.S.C. § 1988 and other applicable laws, including TEX. CIV. PRAC. & REM. CODE § 37.008. *See* CR.403-404. Even if the withdrawal of Appellant's RTE rendered the distinct issue of prospective reissuance moot, it could not render moot the entirety of this case and Appellee's claims because Appellee seeks attorneys' fees. *Camarena*, 754 S.W.2d at 151; *Hallman*, 159 S.W.3d at 642–43.

Moreover, Appellant ignores a central element of this case completely unrelated to the RTE. Specifically, Appellee has sought temporary and permanent injunctive relief enjoining Appellant from prosecuting *quo warranto* proceedings without leave of an El Paso District Court. Indeed, Appellant's prosecution of a *quo warranto* proceeding is the *only* issue addressed by the trial court's TRO. CR.564. Appellant does not even address this claim in its plea to the jurisdiction, and it is by no means "impossible" to grant Appellee the relief it seeks related to *quo warranto*. *Abbott v. MALC*, 647 S.W.3d at 690. As long as Appellant remains free to file a retaliatory action *quo warranto,* this case cannot be deemed moot. *See Annunciation House, Inc.*, 719 S.W.3d at 590; *see also, e.g., Heckman,* 369 S.W.3d at 167 ("[I]f even one issue remains live between defendants and the putative class, the suit as a whole is not moot."). Thus, in addition to the voluntary withdrawal of the RTE falling into the mootness exceptions described below, Appellee has live claims for

31

injunctive relief unrelated to the RTE that would absolutely have a "practical effect" if granted. *See Grassroots*, 717 S.W.3d at 876.

**B.     Both the voluntary cessation and capable of repetition exceptions apply.**

Even though this case is not moot on its face, if it were the voluntary cessation and capable of repetition doctrines would both apply to the RTE issue.

**1.     The voluntary cessation exception applies.**

"Voluntary cessation typically is not a basis for mootness because it often represents not a defendant's surrender but its attempt to avoid a binding loss." *Grassroots*, 717 S.W.3d at 878. Further, "'[v]oluntary abandonment' of a challenged action 'provides no assurance' that the action will not recur and typically cannot render a case moot." *Annunciation House*, 719 S.W.3d at 590 (quoting *Matthews ex rel. M.M. v. Kountze ISD*, 484 S.W.3d 416, 419–20 (Tex. 2016)). That is particularly true here, where the Texas Supreme Court has recognized that, even after purporting to withdraw an RTE, the Attorney General's office remains "free to simply file more requests if there is no ruling that deems the relevant requests unconstitutional." *Id.* The mere voluntary abandonment of a records request does not simply render the requested effective relief "impossible." *See Abbott v. MALC*, 647 S.W.3d at 690. If it did, Appellant could unilaterally "control the jurisdiction of courts with protestations of repentance and reform, while remaining free to return to their old

32

ways." *Matthews ex rel. M.M.*, 484 S.W.3d at 418. Because Appellants would be "free to return to their old ways" it must be "absolutely clear that the [challenged conduct] [is] not reasonably [likely] to recur," and there must be no qualifications or prevarications from the party attempting to establish mootness. *Id.* (first alteration in original) (quotation marks omitted) (quoting *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.)) ; *see e.g., In re Cont. Freighters, Inc.*, 646 S.W.3d 810, 812-14 (Tex. 2022) (per curiam) (the voluntary withdrawal of discovery requests did not render moot mandamus petition). These factors and the public interest "militate[] against a mootness conclusion." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (citing *United States v. Trans-Missouri Freight Ass'n*, 166 U. S. 290, 309-310 (1897)).

It is far from clear or assured that Appellant will not repeat the challenged conduct. Appellants argue that they are barred from bringing more RTEs because they have brought suit in Tarrant County and, under TEX. BUS. ORGS. CODE § 12.153, that tool is reserved for pre-suit investigation. App. Br. at 30-31 (citing no authority for this proposition). However, while there may be an argument for applying Appellant's logic to future RTEs served in *Tarrant County,* Appellant offers no compelling argument that it would be legally barred from serving the same or similar RTEs in El Paso. And because such a legally enforceable preclusion is exactly what Appellee seeks, this case indisputably remains live. Appellant Paxton continues to

attack Appellee's First Amendment-protected activities through a variety of tactics and cannot credibly maintain that it is "absolutely clear" that the challenged RTE—or a similar attack—will not soon be resurrected. Indeed, that conclusion is "particularly warranted [] where the attorney general simultaneously claims to have abandoned the challenged conduct *and* appeals a court order enjoining that conduct." Annunciation House, 719 S.W.3d at 590 (emphasis in original).

Moreover, counsel for Appellant qualified their answers and prevaricated when pressed by the trial court on exactly this issue.[4] And any assurance provided by such counsel or the Consumer Protection Division Chief's bears no resemblance to the efficacy of a court order enjoining such requests. For example, even if counsel could be personally subject to sanctions or other ramifications for potentially false representations in a declaration, those punitive remedies are wholly different from the practical effect of a court order deeming any renewed RTE ineffective. Without such a ruling, Appellee would still have to go back into court to seek the same relief it already seeks: a permanent injunction issued by a court that has the jurisdiction to

---

[4] At the August 13, 2025, hearing before the trial court, Appellant's counsel first insisted that the Attorney General's Office will not issue another RTE to Appellee, stating it is "absolutely clear that we're not going to reissue" a request to examine. RR2.65. But when pressed by the court, counsel equivocated, claiming that "we will never reissue *the challenged* RTE," RR2.76 (emphasis added). This colloquy with the Court underscores that this case is far from moot. Rather, as expressly contemplated by the Texas Supreme Court, it is a "records dispute" that is not moot because "the attorney general remains free to simply file more requests if there is no ruling that deems the relevant requests unconstitutional." *Annunciation House*, 719 S.W.3d at 590.

enforce it. And therein lies the heart of this analysis, this case is clearly not moot because Appellee still seeks possible and effective relief that has yet to be provided.

Appellant points to *DeFunis v. Odegaard*, wherein Defunis challenged an admissions policy that had allegedly denied him admission based on race. 416 U.S. 312, 315 (1974) (per curiam). But by the time the case reached the Court, Defunis was about to graduate, and the school had assured his degree regardless of the litigation. *Id.* at 316. Thus, the relief sought was already provided and there was nothing left for the Court to remedy, and the controversy was in fact moot. *Id.* That is not the case here, which is exactly like *Annunciation House*. There, Appellant Paxton argued mootness, despite the fact the State was "free to simply file more requests if there is no ruling that deems the relevant requests unconstitutional." 719 S.W.3d at 590. The Texas Supreme Court rejected that proposition, because "[i]t is not '*impossible* for a court' to grant [] relief from allegedly unconstitutional requests even as the attorney general pursues his legal right to file such requests in this very court." *Id.* (emphasis in original) (quoting *Abbott v. MALC*, 647 S.W.3d at 689).

*Annunciation House* is squarely applicable to the facts here, where Appellee seeks a permanent injunction regarding the RTEs and the *quo warranto* proceedings — as well as attorney's fees — and it is far from "impossible for a court" to grant such relief. The trial court continues to have jurisdiction to hear Appellee's claims for declaratory and injunctive relief under the First and Fourth Amendment of the

35

U.S. Constitution, since without such relief, Appellant will be free to re-serve the RTE at any time, free to file a retaliatory action in *quo warranto*, and free to continue to infringe on Plaintiff's constitutional rights. *See Annunciation House*, 719 S.W.3d at 590. Moreover, the trial court maintains statutory jurisdiction in that a substantial part of the events giving rise to the claims occurred in El Paso County, where Appellee is based.

## 2. The capable of repetition exception applies.

The capable of repetition exception examines whether "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). Put simply, if "the *same dispute* still divides the *same* parties despite the seeming termination of the dispute's initial cause," there is a "'reasonable expectation' of that cause's recurrence." *Grassroots*, 717 S.W.3d at 884 (emphasis in original) (quoting *Williams*, 52 S.W.3d at 184). As discussed above, that is precisely the case here. Appellee seeks injunctive relief against previously issued, and future, RTEs, as well as against *quo warranto* proceedings. These issues were never fully litigated because of how quickly they were withdrawn, and there is a reasonable expectation that the dispute will reoccur.

Appellant argues that the initial RTE has been withdrawn and cites *Annunciation House* for the proposition that pre-compliance review under Rule 176.6(e) is sufficient to satisfy a full litigation of the issue. App. Br. at 29-31. But *Annunciation House* only examined the "voluntary cessation" doctrine when it contemplated that Appellant Paxton was "free to simply file more requests if there is no ruling that deems the relevant requests unconstitutional." *Annunciation House*, 719 S.W.3d at 590. Though this statement supports the conclusion that there is a "reasonable expectation" here that Appellant will issue more RTEs and thus the second prong of the capable of repetition exception is satisfied, *Annunciation House* never directly grappled with the anything akin to the first prong of the capable of repetition exception. As evidenced by standards set out in cases that do, *Annunciation House's* discussion on pre-compliance review was clearly not meant to be applied to the capable of repetition exception's first prong because its standard would be directly at odds with all existing precedent.

The Supreme Court has stated that insufficient time "to receive '*complete judicial review*,' . . . in that Court" satisfies the first prong of the exception. *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) (emphasis in original) (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 774 (1978)). And the phrase "complete judicial review" has been interpreted to mean that "there must be enough time for the Supreme Court to review." *Id.*; *see also Del Monte Fresh*

*Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009). For example, the Supreme Court has found each of twenty days, three months, and two years to be "too short to complete judicial review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016); *see also S. Pac. Terminal Co.* v. *ICC*, 219 U.S. 498, 514–16 (1911) (finding that two years is too short to complete judicial review of the lawfulness of the procurement); *Grassroots*, 717 S.W.3d at 884 (The "first prong of the exception was met because…eleven days [] [is] a period far too short to complete litigation."); *SEC v. Sloan*, 436 U.S. 103, 109 (1978) ("[A] series of consecutive suspension orders may last no more than 20 days, making effective judicial review impossible during the life of the orders.").

The pre-compliance review period of less than forty-eight hours in the present case, similar to the twenty-four hour period discussed in *Annunciation House,* cannot reasonably be assessed as a time sufficient for complete judicial review under the standards set out above. And because "the *same dispute* still divides the *same parties*" and there is a reasonable expectation that the challenged conduct will continue to persist, the capable of repetition exception applies. *Grassroots*, 717 S.W.3d at 884 (emphasis in original).

## CONCLUSION

This Court should "dismiss this interlocutory appeal for want of jurisdiction due to the lack of an appealable order either granting or denying the Attorney

General's plea to the jurisdiction." *City of Austin*, 2024 WL 4446073, at *3. As there has been no implicit denial of Appellant's plea to the jurisdiction, Appellee requests that this Court expressly find that this case is not facially moot, and that both the voluntary cessation and capable of repetition exceptions apply. If this Court does hold that the trial court implicitly denied Appellant's plea to the jurisdiction, however, it should find that such denial was proper because this case is not moot.

Respectfully submitted,

*/s/ Mimi Marziani*
**Mimi Marziani**
Texas Bar No. 24091906
**Joaquin Gonzalez**
Texas Bar No. 24109935
**Rebecca (Beth) Stevens**
Texas Bar No. 24065381
**MARZIANI, STEVENS & GONZALEZ PLLC**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Phone: 210-343-5604
mmarziani@msgpllc.com
jgonzalez@msgpllc.com
bstevens@msgpllc.com

-and-

Lynn Coyle
Texas Bar No. 24050049
lynn@coylefirm.com
2700 Richmond Ave.
El Paso, TX 79930
Tel: (915)276-6700

*Counsel for Appellee,*
*Powered By People*

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i), if applicable, because it contains 9,088 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Mimi Marziani*
Mimi Marziani

# CERTIFICATE OF SERVICE

On October 14, 2025, in compliance with Texas Rule of Appellate Procedure 9.5, I served a true and correct copy of the foregoing document by e-service, e-mail, facsimile, or mail to:

**Via e-Service**: Rob.Farquharson@oag.texas.gov
**Via e-Service**: Abby.Smith@oag.texas.gov
Ken Paxton
Attorney General of Texas
Abigail E. Smith
Assistant Attorney General
Rob Farquharson
Assistant Attorney General
Scott Froman
Assistant Attorney General
Johnathan Stone
Division Chief, Consumer Protection Division
Office of the Attorney General of Texas
Consumer Protection Division
12221 Merit Drive, Ste. 650
Dallas, Texas 75251
*Counsel for Appellant Ken Paxton, in his official capacity as Texas Attorney General*

*/s/ Mimi Marziani*
Mimi Marziani

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Joaquin Gonzalez on behalf of Joaquin Gonzalez
Bar No. 24109935
jgonzalez@msgpllc.com
Envelope ID: 106846338
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellee's Brief
Status as of 10/15/2025 7:11 AM CST

Associated Case Party: Powered by People

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mimi Marziani | 24091906 | mmarziani@msgpllc.com | 10/14/2025 6:53:40 PM | SENT |
| Joaquin Gonzalez | | jgonzalez@msgpllc.com | 10/14/2025 6:53:40 PM | SENT |
| Rebecca (Beth) Stevens | | bstevens@msgpllc.com | 10/14/2025 6:53:40 PM | SENT |
| Lynn Coyle | | lynn@coylefirm.com | 10/14/2025 6:53:40 PM | SENT |

Associated Case Party: Ken Paxton, in his official capacity as Texas Attorney General

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William Cole | 24124187 | William.Cole@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |
| William Peterson | | William.Peterson@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 10/14/2025 6:53:40 PM | SENT |